LORRAINE HINCHLIFFE ET AL. *v.* AMERICAN MOTORS
CORPORATION ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued April 2—decision released July 21, 1981

*Alan L. Robertson, Jr.,* with whom was *Jason E. Pearl,* for the appellants (plaintiffs).

*Philip S. Walker,* with whom, on the brief, was *Jon E. Hayden,* for the appellees (defendants American Motors Corporation and American Motors Sales Corporation).

*Robert N. Wienner,* with whom, on the brief, was *Jane A. H. Arnold,* for the appellee (defendant Lipman Motors, Inc.).

*Carl R. Ajello,* attorney general, and *Robert M. Langer* and *Arnold B. Feigin,* assistant attorneys general, filed a brief as amici curiae.

PARSKEY, J. This lawsuit arose from the plaintiffs' purchase of a new American Motors Jeep Wagoneer. The plaintiffs commenced this action with a six-count complaint, alleging fraud, breach of implied and express warranties, and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes §§ 42-110a through

42-110q.[1]  After the plaintiffs presented their evidence at trial, the defendants moved for a judgment of dismissal, claiming that the plaintiffs had failed to make out a prima facie case on all counts. See Practice Book § 302.  The trial court found that no ascertainable damages had been proved and granted the defendants' motion.  The plaintiffs have appealed, claiming that the court erred in concluding that no prima facie case had been established under either a warranty theory or CUTPA. Our resolution of this issue makes it unnecessary for us to address the plaintiffs' claim that it was error to refuse to admit into evidence a receipt signed by the plaintiff, David Hinchliffe, for repair work done to the Jeep Wagoneer.

# I

A motion for judgment of dismissal has replaced the former motion for nonsuit for failure to make out a prima facie case.  Compare Practice Book § 302 with Practice Book, 1963, § 278; see *Lukas* v. *New Haven,* 184 Conn. 205, 210 n.3, 439 A.2d 945 (1981).  When such a motion has been granted, the question is whether sufficient facts were proved to make out a prima facie case. *Pignatario* v. *Meyers,* 100 Conn. 234, 239–40, 123 A. 263 (1924).  To state it another way, a judgment of dismissal is proper "when the evidence produced by the plaintiff, if fully believed, would not permit the trier in reason to find the essential issues on the complaint in favor of the plaintiff." *Minicozzi* v. *Atlantic Refining Co.,* 143 Conn. 226, 230, 120 A.2d 924 (1956).  The evidence offered by the plaintiff is to be taken as true and interpreted in the

---

[1] For a discussion of this act, see Langer & Ormstedt, "The Connecticut Unfair Trade Practices Act," 54 Conn. B.J. 388 (1980).

light most favorable to him, and every reasonable inference is to be drawn in his favor. *Ace-High Dresses, Inc.* v. *J. C. Trucking Co.,* 122 Conn. 578, 579, 191 A. 536 (1937). A party has the same right to submit a weak case as he has to submit a strong one. *Fritz* v. *Gaudet,* 101 Conn. 52, 53, 124 A. 841 (1924). See *Lukas* v. *New Haven,* supra, 210–11; *Crowell* v. *Palmer,* 134 Conn. 502, 505, 58 A.2d 729 (1948); Maltbie, Conn. App. Proc. §§ 215 and 217; Stephenson, Conn. Civ. Proc. (2d Ed.) § 192f. We review the plaintiffs' claims notwithstanding the absence of a memorandum of decision; see Practice Book § 3060B; because the only issues before us concern whether, taking the evidence in the light most favorable to the plaintiffs, a prima facie case has been made out.

## II

At trial the plaintiffs established the following facts: In April, 1976, they were in the market for a motor vehicle capable of hauling their camper trailer. On April 23, 1976, they purchased a new Jeep Wagoneer from the defendant Lipman Motors, Inc. The motor vehicle was manufactured by the defendant American Motors Corporation, and was sold to Lipman Motors, Inc. by the defendant American Motors Sales Corporation. It was warranted for twelve months or 12,000 miles, whichever occurred first. Both during and after this period, the plaintiffs experienced problems with the fuel delivery system, the air conditioning, the transmission, the electrical system, the cooling system and the back door.

Viewed in the light most favorable to the plaintiff; *Minicozzi* v. *Atlantic Refining Co.,* supra, 229–30; the evidence also demonstrated that what the

defendant American Motors Corporation had advertised as "full-time four-wheel drive" was actually a system for transmitting power to the wheels using a limited slip differential mechanism. The slipping ability of the differential allowed the wheels to turn at different speeds while the vehicle was cornering. This same trait, which made possible the "full-time" characteristic of the vehicle, however, also resulted in the loss of traction under certain circumstances. When these wheel spinning episodes occurred, the vehicle could be extricated by activating an emergency "lock-out" device operated by a switch in the glove compartment. This device allowed the slip differential to be bypassed, and the vehicle then assumed the characteristics of conventional four-wheel drive vehicles. The plaintiffs claim that this evidence was sufficient to make out a prima facie case and contend that the trial court erred in ruling otherwise. We agree.

## III

With respect to the two CUTPA counts contained in the complaint, the trial court confined its ruling on the defendants' motion for judgment of dismissal to the question of "ascertainable loss." If, however, the plaintiffs failed to produce sufficient evidence to support a finding that the defendants' conduct constituted an unfair or deceptive trade practice, then the court's decision would be correct, albeit for a different reason than that stated. *Lewis v. Scoville,* 94 Conn. 79, 86, 108 A. 501 (1919); Maltbie, Conn. App. Proc. § 36. Interpreted in the light most favorable to the plaintiffs; *Ace-High Dresses, Inc.* v. *J. C. Trucking Co.,* supra; the evidence relating to the first CUTPA count could support a con-

clusion that the representation that the vehicle had "full-time four-wheel drive" was deceptive under General Statutes § 42-110b (a).

With respect to the other CUTPA count, however, the plaintiffs have not sustained their evidentiary burden. In this count, the plaintiffs claim that the defendants committed an unfair or deceptive trade practice by failing to disclose that certain component parts of the Jeep were not manufactured by American Motors. Because nothing in the record before us suggests that the defendants either affirmatively misrepresented or had a duty to disclose the specific manufacturing history of the component parts, the plaintiffs have not shown that the defendants engaged in an unfair or deceptive trade practice in this respect.

## IV

Thus the principal issue on this appeal is whether a plaintiff must prove actual damages in a particular amount in order to pursue an action under CUTPA. The trial court held that, in order to withstand a motion for judgment of dismissal under Practice Book § 302, the plaintiffs had to prove that they suffered actual damages in a particular amount. In so ruling, it relied on the provision of General Statutes § 42-110g (a) which allows "[a]ny person who suffers *any ascertainable loss* of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, [to] bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages." (Emphasis added.) We hold that the words "any ascertainable loss" as used in this section do

not require a plaintiff to prove a specific amount of actual damages in order to make out a prima facie case. Accordingly, the decision of the trial court is reversed.

## A

Our conclusion finds initial support in the language chosen by the legislature when it framed § 42-110g (a). Where drafters meant "actual damages," they employed those exact words.[2] The use of different terms within the same sentence of a statute plainly implies that differing meanings were intended. See *Johnston* v. *Hartford,* 96 Conn. 142, 150–51, 113 A. 273 (1921). Moreover, the inclusion of the word "ascertainable" to modify the word "loss" indicates that plaintiffs are not required to prove actual damages of a specific dollar amount. "Ascertainable" means "capable of being discovered, observed or established." *Scott* v. *Western International Surplus Sales, Inc.,* 267 Or. 512, 515, 517 P.2d 661 (1973).

"Loss" has been held synonymous with deprivation, detriment and injury. Black's Law Dictionary. It is a generic and relative term. *United States* v. *City National Bank of Duluth,* 31 F. Sup. 530, 533 (D. Minn. 1939). "Damage," on the other hand, is only a species of loss. Id., 532. The term "loss" necessarily encompasses a broader meaning than the term "damage." Id.

---

[2] "[General Statutes] Sec. 42-110g. ACTION FOR DAMAGES. CLASS ACTIONS. COSTS AND FEES. EQUITABLE RELIEF. (a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."

Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known. CUTPA is not designed to afford a remedy for trifles. In one sense the buyer has lost the purchase price of the item because he parted with his money reasonably expecting to receive a particular item or service. When the product fails to measure up, the consumer has been injured; he has suffered a loss. In another sense he has lost the benefits of the product which he was led to believe he had purchased. That the loss does not consist of a diminution in value is immaterial, although obviously such diminution would satisfy the statute. To the consumer who wishes to purchase an energy saving subcompact, for example, it is no answer to say that he should be satisfied with a more valuable gas guzzler.

## B

Under CUTPA, there is no need to allege or prove the amount of the ascertainable loss. See *Scott* v. *Western International Surplus Sales, Inc.*,[3] supra, 516. To satisfy the "ascertainable loss" requirement, a plaintiff need prove only that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is

---

[3] The defendants argue that the *Scott* v. *Western International Surplus Sales, Inc.*, 267 Or. 512, 517 P.2d 661 (1973), case is inapposite because the Oregon statute there construed provided for $200 damages as a minimum recovery if a plaintiff proved that he suffered some ascertainable loss. For purposes of resolving the issues in the present case, it makes no difference whether the ultimate judgment rendered in the action is one for the $200 minimum recovery provided for by the Oregon statute or an award of nominal damages or a decree for equitable relief. See *Kimball* v. *Hall*, 87 Conn. 563, 566, 89 A. 166 (1913).

different from that for which he bargained. This approach is in keeping with the remedial aims of the statute[4] and will ensure that the private civil action established by the statute will remain a meaningful avenue of redress for consumers who have been the victims of unfair or deceptive trade practices.[5]

Adoption of the defendants' view, that ascertainable loss is equivalent to actual damages, would eviscerate the private remedy provided by CUTPA. The ascertainable loss requirement is a threshhold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief.[6] Were we to construe that barrier as a requirement that all plaintiffs show actual damages, any person who bought an item which was deceptively advertised but was actually

---

[4] "It is the intention of the legislature that this chapter be remedial and be so construed." General Statutes § 42-110b (d). Remedial statutes are to be liberally construed in favor of those whom the legislature intended to benefit. *Hartford Fire Ins. Co.* v. *Brown,* 164 Conn. 497, 503, 325 A.2d 228 (1973).

[5] The crucial nature of the role envisioned for the private consumer remedy was underscored during debate on chapter 735a and the amendments thereto. Senator Stephen C. Casey, for example, remarked: "The bill in general would promote greater cooperation between public and private efforts to enforce the uniform trade practices act. The Attorney General's office is hampered in this enforcement effort by limited staff. Private litigation under this act is essential and the proposal would ease the burden on private individuals and thus encourage private litigation." 22 S. Proc., Pt. 8, 1979 Sess., p. 2575. See also 19 H. R. Proc., Pt. 6, 1976 Sess., p. 2191; 16 H. R. Proc., Pt. 14, 1973 Sess., p. 7323.

[6] One commentator has suggested that the only function served by a threshold "loss" requirement in a consumer protection statute is to guard against vicarious suits by self-constituted attorneys general when they spot an apparently deceptive advertisement in the newspaper, on television or in a store window. Rice, "New Private Remedies for Consumers: The Amendment of Chapter 93A," 54 Mass. L.Q. 307, 314 (1969).

of a value equal to or greater than the item as advertised would not be able to obtain a rescission under CUTPA.

Such a construction impairs the efficacy of the equitable remedies provided by CUTPA, and prevents the statute from achieving the remedial effect which the legislature desired. Comparing the common-law remedies for deceived consumers with the CUTPA remedy demonstrates the legal progress which the legislature sought when it enacted the new statute.

With respect to deception which can be shown to be intentional, the common-law tort of deceit has long provided a remedy for a deceived consumer. See Prosser, Torts (4th Ed.) § 107. Redress for the misrepresentation which is innocent, however, has not always been forthcoming. See 3 Restatement (Second), Torts § 552C, comment a. The somewhat uneven development of common-law liability for innocent misrepresentation was analyzed by this court in *Johnson* v. *Healy*, 176 Conn. 97, 100–101, 405 A.2d 54 (1978). There, we characterized the cause of action for innocent misrepresentation as sounding in warranty. Id., 101–102. In cases involving transactions in goods, common-law warranty actions have been displaced by the provisions of the Uniform Commercial Code. General Statutes §§ 42a-1-103; 42a-2-102; 42a-2-313 through 42a-2-318.

Against this background, the legislature enacted CUTPA, announcing that "[i]t is the intention of the legislature that this chapter be remedial and be so construed." General Statutes § 42-110b (d). The act is aimed at eliminating or discouraging "unfair methods of competition and unfair or

deceptive acts or practices." General Statutes § 42-110b (a). The act proscribes a broader range of conduct than did the common-law action for innocent misrepresentation.[7] In deciding what constitutes an unfair or deceptive act or practice, courts of this state are encouraged to look to interpretations of the Federal Trade Commission Act; 15 U.S.C. 45 (a) (1); rendered by both the federal trade commission and the federal courts. For the plaintiff victimized by such conduct, CUTPA provides an action more flexible and a remedy more complete than did the common law.

The increased flexibility of the action stems from the absence of certain obstacles to recovery under the common-law action. The CUTPA plaintiff need not prove reliance or that the representation became part of the basis of the bargain. Compare this with the approach manifested in *Johnson* v. *Healy*, supra, 101. General Statutes §§ 42a-2-313 and 42a-2-315. See also 3 Restatement (Second), Torts § 552C.

The plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law.[8] The ability to recover both attorneys' fees; General Statutes § 42-110g (d); and punitive damages; General Statutes § 42-110g (a); enhances the private CUTPA remedy and serves to encourage private CUTPA litigation. The legislative history,

---

[7] To describe the ambit of proscribed conduct as being broader than simple misrepresentation is not to suggest that every misrepresentation, however insignificant, necessarily falls into the category of an unfair or deceptive act or practice actionable under CUTPA.

[8] For a statement of the common-law rule for calculating damages and an illustration of its potential inadequacy, see *Johnson* v. *Healy*, 176 Conn. 97, 104–107, 405 A.2d 54 (1978), and *Johnson* v. *Healy*, 183 Conn. 514, 515, 440 A.2d 765 (1981).

a sample of which appears at footnote 5, supra, demonstrates that CUTPA seeks to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts. To interpret CUTPA narrowly, perhaps on the ground that a victimized consumer has other, less complete, remedies available to him, effectively negates this legislative intent.

The importance of equitable remedies to the CUTPA scheme is underscored by the fact that equitable relief is expressly provided for in two separate parts of the statute. General Statutes §§ 42-110g (a) and (d). To obtain an equitable remedy at common law, a party need not prove actual damages in every case. "[I]n measuring injury, equity does not concern itself merely with money losses. If it finds that a clear right has been invaded, and that redress can be secured by putting the parties back in their original position, it will seldom refuse its aid because the plaintiff can show no substantial damage to his pecuniary interests." *Brett* v. *Cooney,* 75 Conn. 338, 342, 53 A. 729 (1902). Accord *Harper* v. *Adametz,* 142 Conn. 218, 113 A.2d 136 (1955). This approach still obtains under CUTPA. Subsection (d) of § 42-110g expressly contemplates plaintiffs' judgments which do not include an award of money damages. "In a class action where there is no monetary recovery, but other relief is granted on behalf of a class, the court may award, to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorneys' fees." General Statutes § 42-110g (d). This demonstrates that CUTPA is not limited to providing redress only for consumers who can put a precise dollars and cents figure on their loss. To equate, as do the defendants, "ascertainable loss

of money or property" with "actual damages in a particular amount" would render nugatory a significant portion of CUTPA. Because the plaintiffs in the present case sought both actual damages and equitable relief, any failure to prove a particular amount of pecuniary damages does not render their action subject to a judgment of dismissal for failure to make out a prima facie case.

Even if we restrict our analysis to an action seeking monetary damages only, the trial court was still incorrect in dismissing the action. Under the standard we articulate today the plaintiffs demonstrated that they suffered an ascertainable loss when they produced evidence fairly suggesting that, as a result of an unfair or deceptive trade practice, they received something different from that for which they had bargained. We need not be concerned at this stage of the proceedings with what actual damages, if any, they may ultimately recover. "Whether the evidence offered any reasonable basis for fixing the amount of the plaintiff's damages is a question which need not be considered. It is sufficient in law to support a judgment for nominal damages, and the plaintiff was therefore entitled to go to a hearing on the merits." *Kimball* v. *Hall,* 87 Conn. 563, 566, 89 A. 166 (1913).

Closely analyzed, the plaintiffs' evidence also overcomes the higher threshold of showing diminution in value as a result of the allegedly deceptive representation that the vehicle had full-time four-wheel drive. Their testimony, if fully credited, indicated that what was advertised as Quadra-Trac four-wheel drive, was actually something less desirable than full-time four-wheel drive. The trier could infer that the presence of the advertised

feature added some value to the vehicle because "Quadra-Trac" was listed on the price sticker as an accessory item included in the vehicle's total price. Because it was a "standard feature," however, no specific dollar value is assigned on the sticker.

## V

The plaintiffs next claim that the trial court erred in ruling that they had failed to make out a prima facie case under the counts of their complaint which sounded in warranty. Here again, we measure the plaintiffs' evidence against a relatively low standard: Whether, by taking all the evidence produced as true and considering all inferences in the plaintiffs' favor which can be drawn therefrom, the plaintiffs have sustained their burden of showing a prima facie case. It is clear that the evidence, viewed in this manner, was sufficient to resist a Practice Book § 302 motion for judgment of dismissal.

The evidence under the second count suggested that the defendant Lipman Motors, Inc. was aware of the particular purpose for which the plaintiffs intended to use the vehicle, that Lipman indicated that the vehicle would be suitable for that purpose, that the defendant had reason to know that the plaintiffs would, and in fact did, rely on the defendant's skill or judgment in buying the vehicle, that the vehicle was unfit for the particular purpose, and that the plaintiffs so notified the defendant. See General Statutes §§ 42a-2-315 and 42a-2-607 (3) (a). See generally White & Summers, Uniform Commercial Code § 9-9.

Under the fourth count of the complaint, the plaintiffs produced evidence sufficient to support

a finding the the defendant American Motors Corporation expressly warranted the vehicle under a manufacturer's standard warranty and that the defendants were notified of various malfunctions of the vehicle but were unable to correct them. The defendants' arguments, that the existence of a warranty was not proven[9] and that no notice of the breach was given pursuant to General Statutes § 42a-2-607 (3) (a), are unpersuasive. Regarding the existence of a warranty, the plaintiffs' exhibit J states that "this vehicle is subject to a limited warranty by American Motors Sales Corp." While the record does not disclose the precise terms of the warranty, its existence coupled with evidence indicating that the defendants serviced the vehicle free of charge on occasion suggest the general nature of the warranty.

With respect to notice as required by General Statutes § 42a-2-607 (3) (a), the defendants maintain that the plaintiffs were required to give notice of any malfunctions arising after the warranty period expired and to demonstrate that the defendants were unwilling to repair the problem. Even if we were to agree with this position, the plaintiffs testified that they brought the vehicle back at least five times for repairs to the air conditioning system, for example, both during and after the warranty period, and that the system still did not function properly. Under these circumstances, the defendants have received notice sufficient to satisfy General Statutes § 42a-2-607 (3) (a). *Stelco*

---

[9] The defendants also raise the issue of whether notice was properly pleaded. A Practice Book § 302 motion for judgment of dismissal, like its predecessor, the motion for nonsuit, does not test the sufficiency of the allegations of the complaint. *Pignatario* v. *Meyers,* 100 Conn. 234, 239, 123 A. 263 (1924).

*Industries, Inc.* v. *Cohen,* 182 Conn. 561, 565-66, 438 A.2d 759 (1980). The plaintiffs established a prima facie case in warranty.

The trial court, in granting the Practice Book § 302 motion, relied on the failure of the plaintiffs to prove damages of a particular amount. To repeat what has been said in part IV, supra, so long as damages are not an element of a cause of action, a plaintiff sustains the burden of establishing a prima facie case even though the amount of damages supported by the evidence is uncertain. See *Kimball* v. *Hall,* supra. The plaintiffs theoretically could have been entitled to nominal damages. *Buckley* v. *Buckley,* 144 Conn. 403, 408, 133 A.2d 604 (1957); Calamari & Perrillo, Contracts (2d Ed.) § 203. Although the plaintiffs may not have presented a strong case for obtaining relief, even a weak case may be strong enough to withstand the zephyr of an evidentiary nonsuit. *Del Vecchio* v. *Civil Service Commission,* 178 Conn. 490, 492-93, 423 A.2d 139 (1979). The defendants' motion for judgment of dismissal should have been denied.

## VI

Although the plaintiffs' complaint included a count sounding in fraud, the trial court's ruling dismissing that count is not attacked in the plaintiffs' brief. Any claim of error concerning that count has therefore been abandoned. *State* v. *Bucchieri,* 176 Conn. 339, 345 n.6, 407 A.2d 990 (1978). Moreover, we find nothing in the plaintiffs' brief which relates to a claim of error in the first count of the complaint. Consequently, as to counts

one, three, and six, the trial court committed no error. As to counts two, four, and five, however, a new trial[10] is required.

There is error in part, the judgment with respect to counts two, four and five is set aside and a new trial is ordered.

In this opinion BOGDANSKI, C. J., and HEALEY, J., concurred.

ARMENTANO, J. (dissenting). I disagree with the majority's analysis of the meaning of "ascertainable loss." In order to establish a right to either legal or equitable relief under CUTPA, the plaintiff has a threshold requirement, as part of his prima facie case, to establish an *"ascertainable loss of money or property,* real or personal, as a result of the use or employment" of unfair methods of competition or unfair or deceptive acts or practices. (Emphasis added.) General Statutes § 42-110g (a); see General Statutes § 42-110b. Since "ascertainable loss" has not been defined by either this court or the statutes, the term must be construed according to the commonly approved usage of the language. General Statutes § 1-1; *Rosnick* v. *Aetna Casualty & Surety Co.,* 172 Conn. 416, 422, 374 A.2d 1076 (1977). When a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries. *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981).

---

[10] Because of the procedural posture of this case, there is no occasion to apply the rule that judgments are not ordinarily set aside merely to allow an award of nominal damages. See, e.g., *Sessa* v. *Gigliotti,* 165 Conn. 620, 622, 345 A.2d 45 (1973). In the present case, the trial court erred in granting the defendants' motion for a judgment of dismissal; accordingly the case must be remanded for the full trial to which the plaintiffs were entitled. See *Kimball* v. *Hall,* 87 Conn. 563, 566, 89 A. 166 (1913).

"Ascertainable" means "capable of being ascertained." "Ascertain" is defined as "to make . . . certain, sure, or confident . . . to find out or learn for a certainty . . . ." The definition of "loss" includes "decrease in amount, magnitude, or degree." Webster, Third International Dictionary; see Black's Law Dictionary (5th Ed.). Employing these definitions, I would hold that a plaintiff meets the threshold requirement of "ascertainable loss" when he introduces evidence from which the trier of fact could find or infer that the consumer suffered an actual loss of money or property. The particular amount of loss, however, need not be shown. See *Gerasta* v. *Hibernia National Bank,* 411 F. Sup. 176, 193 (D. La. 1976), remanded on other grounds, 575 F.2d 580 (5th Cir. 1978); *Murphy* v. *McNamara,* 36 Conn. Sup. 183, 194–98, 416 A.2d 170 (1979); *Attaway* v. *Tom's Auto Sales, Inc.,* 144 Ga. App. 813, 815, 242 S.E.2d 740 (1978); *Baldassari* v. *Public Finance Trust,* 369 Mass. 33, 44–46, 337 N.E.2d 701 (1975); *Scott* v. *Western International Surplus Sales, Inc.,* 267 Or. 512, 515–16, 517 P.2d 661 (1973); *Reiger* v. *DeWylf,* 566 S.W.2d 47, 48 (Tex. 1978).

When misrepresentation is the alleged unfair or deceptive act, practice or method of competition, the easiest way to demonstrate actual loss may be by offering evidence that the actual value of the product sold is less than what it would have been worth if it had been as represented (usually the selling price). The difference represents the actual loss suffered by the consumer. See *Crowther* v. *Guidone,* 183 Conn. 464, 469, 441 A.2d 11 (1981); Wright, Connecticut Law of Torts § 145.

Defining "ascertainable loss" as meaning an ability to show "actual loss" is supported by the legis-

lative intent. When Representative Howard A. Newman reported the original CUTPA bill to his colleagues on the House floor, he commented: "But most important, Mr. Speaker, the bill provides for private enforcement by individual consumers who have been *injured* by prohibited acts . . . . This act gives *honest businessmen* great protection in [sic] deceptive or unscrupulous competitors who by unfair methods of competition and deceptive advertising, etc. unlawfully divert trade away from abiding businessmen." (Emphasis added.) 16 H. R. Proc., Pt. 14, 1973 Sess., p. 7323. CUTPA's requirement of proof of at least a nominal actual loss of money or property functions to separate injured consumers from all others and to distinguish honest businessmen from unscrupulous ones. The act was not intended to subject honest businessmen to the risk of class actions and to a possible liability for attorneys' fees and punitive damages. General Statutes § 42-110g.

This interpretation of the phrase "ascertainable loss" does not mean that persons may misrepresent their products to the public with impunity under the law as long as a consumer is unable to prove some actual loss of money or property. CUTPA gives the commissioner of consumer protection tremendous powers to prevent such deception without any requirement of establishing ascertainable loss. See General Statutes §§ 42-110b (c), 42-110f, and 42-110j through 42-110p. Likewise, as noted in the majority opinion, a consumer may seek recission under the common-law tort of deceit, even though there have been no actual damages.

The majority opinion sets out the following rule after analyzing the meaning of ascertainable loss:

"Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property . . . . That the loss does not consist of a diminution in value is immaterial . . . ." To allow a consumer to establish a prima facie case under CUTPA without demonstrating at least a nominal "diminution in value" ignores not only the letter of CUTPA, particularly the use of the word "loss," but also the spirit of the act. Under such an interpretation, if the defendants had represented that one of its vehicles would travel twenty-five miles per gallon of gasoline, they would be open to a lawsuit under CUTPA if the vehicle actually performed more economically. Such a result could not have been within the intention of the legislature. In their zeal to promote liability under CUTPA, the majority has disregarded both the legislature's intent and its use of the word "loss."

In the appeal before us, the plaintiffs never claimed, nor was there any evidence to support a claim, that the actual value of the vehicle purchased by them differed from its value as represented. At best, they point to the vehicle's full purchase price as their ascertainable loss because of the defendants' alleged misrepresentations. The fact that the plaintiffs have offered evidence to establish a prima facie case of a deceptive trade practice does not automatically mean they have established a prima facie case of an ascertainable loss. To do so they must present some evidence that they have suffered some loss of money or property, although not in any particular amount. Since the plaintiffs in this appeal were unable to demonstrate any loss to them, I find no error in the trial court's decision to grant the motion for judgment of dismissal as to those

counts brought pursuant to CUTPA. Because I would so hold, it is not necessary to consider whether the plaintiffs offered sufficient evidence to establish a prima facie case as to the two alleged deceptive acts or whether a consumer need not prove reliance in order to recover in an action brought under CUTPA.

I disagree with the majority's opinion dealing with counts two, four and five of the plaintiffs' complaint and would find no error in the court's judgment of dismissal of the entire complaint.

In this opinion PETERS, J., concurred.