[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR ATTORNEYS' FEES
Ball Hill for plaintiff. CT Page 6877
G. Battistoli for defendant.
This court, pursuant to General Statutes § 42-110g(d), allowed the plaintiff to present evidence regarding reasonable attorneys' fees. (See Memorandum of Decision on Defendant's Motion to Set Aside the Verdict). The issue of attorneys' fees arises out and as a result of a plaintiff's verdict; it is a punitive award to be granted or denied at the discretion of the court. Gargano v. Heyman, 203 Conn. 616. 622, 525 A.2d 1343
(1987). This Court reviewed exhibits and heard testimony. If the court were to find the defendants responsible for the plaintiff's attorneys' fees, the court would find the sum of $7,500 as reasonable and appropriate.
The issue presented for factual determination by the jury was whether the defendants were guilty of a practice that offended public policy, that was immoral unethical or unscrupulous, and that caused substantial injury to the plaintiff competitor S. Pope Inc. In fact, however, all of the actors in this case are brothers. Steven and Harry. Pope are agents, servants, and/or employees of the plaintiff corporation S. Pope Inc. The defendant Jonathon Pope is an agent servant and/or employee of the defendant corporation Pope Exterminating Inc. A corporation acts through its duly authorized agents, servants and employees. Accordingly, the conduct and behavior of both Steven and Harry Pope make up the practice of S. Pope Inc., when acting for that corporation.
The jury was never permitted to make a finding as to whether or not the plaintiff itself acted inappropriately. There was no opportunity to raise such an issue as a legal defense, nor was there any requirement that the plaintiff have clean hands before bringing its claim. The jury found that the defendants were in violation of CUTPA; that jury could also have believed that the defendants were more culpable, equally culpable or less culpable than the plaintiff. We have no way of making that determination. In any event, the court is left with the issue of whether or not to award reasonable attorneys' fees to the plaintiff.
Both the majority and the dissent in Hinchliffe v. AmericanMotors Corporation, 184 Conn. 607, 440 A.2d 810 (1981), hold that the CUTPA statute is remedial in nature. The law was intended to give honest businessmen protection from deceptive or unscrupulous behavior of others practicing unfair methods of CT Page 6878 competition and deceptive advertising. Id., 625. The legislative intent is set out in General Statutes § 42-110b(a): "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." (Emphasis added).
Section 42-110g(a) provides that "[a]ny person who suffers any ascertainable loss as a result of . . . a method, act or practice prohibited by section 42-110b, may bring an action to recover . . . actual damages." There is no provision within the law itself requiring that such a plaintiff be honest, scrupulous or ethical in its own practices. Nor does the statute provide a basis or evidential vehicle to defend a CUTPA claim on the ground that the plaintiff is also guilty of inappropriate behavior. Even if a counterclaim were bought alleging CUTPA violations on the part of the plaintiff, that counterclaim would stand or fall on its own merits and not be in defense of the plaintiff's claim. Yet the Supreme Court has spoken on the issues as aforesaid. Certainly it is implicit in the remedial statutory scheme of CUTPA that those who claim such a violation should not themselves be guilty of misconduct.
The present case is one that involves the development of several competing pest control businesses run by brothers. The evidence discloses that the brothers were introduced to the trade and trained in part by their father Harold Pope, who had originated the family business under the name Control, Inc. In 1981, a portion of the father's tree and lawn care business was sold to his son Steven, who incorporated under the name S. Pope, Inc. See Plaintiff's Exhibit #1.
Apparently the name Pope, Inc. was unavailable from the Secretary of State's office due to prior use for a spaghetti business. Despite this fact, in 1981 the plaintiff filed a Certificate of Adoption of Trade Name in Killingworth under the name "Pope, Incorporated." Defendants' Exhibit #3.
Telephone books dated 1981 and 1983 were admitted into evidence and show Harold Pope advertising in the Yellow Pages under his name and "Control, Inc.," and his son Steven advertising under the name "Pope S Inc." Defendants' Exhibits #4 and #5. During this time defendant Jonathan Pope worked for Control, Inc. Later, in a telephone book dated 1985, he began to advertise his own individual pest control services under the name "Pope, Jonathan Pest Control," and the original Control, Inc. ads CT Page 6879 were changed to the heading "Pope Pest Control Service — Div. of Control, Inc." and included "Harold L. Pope, Owner. Plaintiff's Exhibit #3. The 1985 telephone book also contains a new ad by the plaintiff in addition to "Pope S. Inc," with a heading of "Exterminating by Pope," and promoting both indoor and outdoor pest control services. Id.
A 1987 telephone book shows two additional ads placed by the plaintiff, under new headings entitled "Pope Exterminating," and "Pope Inc." Plaintiffs Exhibit #4. By 1989 the proliferation of "Pope" ads had spread to the white pages section of the telephone book, with the plaintiff listing itself as "Pope Exterminating" and "Pope S Inc." in large red print in the white pages, in addition to three listings in the Yellow Pages. Plaintiff's Exhibit #5. The defendants continued to advertise under the names "Pope Pest Control Service — Div of Control Inc, "Jonathan Pope," and "Control Inc." Id.
In the most recent phone book, the 1993-94 Yellow Pages, there are two large scale ads, one entitled "Pope Exterminating Inc. Div. of Control Inc." placed by defendant and one entitled "Exterminating by Pope" placed by the plaintiff. Defendants' Exhibit #6. In addition, there are three "Pope Exterminating" listings, only one of which is identified as the plaintiff S. Pope Inc. as well as listings for "Pope Exterminating Inc.," "S. Pope Inc.," and "Control Inc." Id. The white pages contain a large red print listing for "Pope Exterminating" by the plaintiff, directly above a listing for "Pope Exterminating, Inc.," the name under which defendant Jonathan Pope incorporated in 1991. Id. In addition, there are separate listings in the white pages for "Pope Pest Control," "Pope Pest Control S Pope Inc," and "Pope S Inc." Id.
It is plainly obvious from the preceding undisputed facts that all parties to this dispute are and are engaged in an escalating advertising war involving the family surname, with all parties interested in the good name and reputation which developed out of Harold Pope's original business. The most recent telephone phone book demonstrates all too well the likelihood of customer confusion as to who was who. The telephone company itself refused to take further ads. The plaintiff in the present case sought and obtained a jury verdict in its favor that the defendants had engaged in unfair trade practices, in part because of their incorporation under the name "Pope Exterminating, Inc." However, it is apparent from the evidence discussed above that the CT Page 6880 plaintiff itself contributed to and perpetuated this conflict.
S. Pope Inc. took out an increasing number of ads over the years, attempting to incorporate the terms "Pope" "Exterminating," and "Pest Control" in multiple combinations for multiple ads. The ads eventually spread from the Yellow Pages to the white pages. The plaintiff also advertised itself as "Family Owned And Operated Since 1943," despite the fact that the father's original business, Control, Inc., had been taken over by the defendant Jonathan Pope in 1992. In 1990 the plaintiff filed a Certificate of Adoption of Trade Names in Old Saybrook, listing "Pope Pest Control," "Pope Exterminating," "Pope Lawn Care," and "Pope Tree Care" as additional names. Defendants' Exhibit #11. This maneuver appears to this court to be an effort to legitimize and extend the plaintiff's attempted monopoly over the "Pope" name in advertising. It is apparent that by this time attorneys had become involved and were advising on strategy and tactics. Finally, the plaintiff pursued its current lawsuit against the defendants, seeking in part an injunction against the use of the family surname in the defendants own individual business.
While the plaintiff's conduct may not have been illegal or unethical, it was to this court's mind certainly unfair. Based upon all of the evidence before this court, the conduct of all of the parties and their agents, servants and employees, and the remedial nature of the CUTPA statute, the court concludes that it would be inappropriate to award attorneys' fees to the plaintiff. The court is not asserting that there must be a balancing act regarding the conduct of the plaintiff and the defendants. Nor is the Court taking the position that the plaintiff must be "squeaky clean" before pursuing an action under CUTPA. What the court is saying is that the statutory provision in § 42-110g(d) gives the court the discretion to award "to the plaintiff . . . costs and reasonable attorneys' fees."
The court concludes that CUTPA is all about fairness. Before this court will exercise its discretion and award attorneys' fees in this case, the court should at least be satisfied that the plaintiff's behavior in dealing with the defendants was fair. This court is not so satisfied. The plaintiff company shares some blame, some fault and some guilt for inappropriate behavior, and for perpetuating and escalating this conflict. It would be unfair for this court to award attorneys' fees in light of this. It would also be contrary to the remedial nature of the statute under which it is claimed. The motion for award of attorneys' fees is denied.
Walsh, Judge CT Page 6881