[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION 
At issue in this case are the remedies available under the Connecticut Unfair Trade Practices Act, Connecticut General Statutes § 42-110a, et seq.(CUTPA), where the plaintiff cannot prove actual lost profits as a result of his competitor's alleged anticompetitive practices.
At all times relevant to this action, the plaintiffs, Service Road Corporation and Cousin Vinnie's, Inc., operated adjacent exotic dance clubs known as "Uncle Al's" and "Cousin Vinnie's", at 145-147 West Service Road in Hartford and the defendant, Daniel Quinn, operated an adult bookstore, known as "Danny's Adult Book World", at 151 West Service Road. During the time period at issue in this case, Quinn also owned and operated two exotic dance clubs, "Kahoots" in East Hartford, and "Carrie-Ann's" in Vernon. Those establishments were competitors of Unde Al's and Cousin Vinnie's.
On September 7, 1993 the plaintiffs' attorney notified Quinn and the Hartford Police Department by letter of alleged sexual activity and drug use by customers of Danny's Adult Book World at the rear of Quinn's property. Approximately two weeks thereafter, Quinn installed two video surveillance cameras on the south side of Quinn's building facing the plaintiffs' clubs. One of the cameras pointed at Uncle Al's front door and the other at Cousin Vinnie's front door. Within a short time thereafter Quinn installed four to five additional cameras on his building. Four of those cameras were also trained on the front entranceways of Uncle Al's and Cousin Vinnie's.
A short time after the cameras were installed, the defendant Gordon Debigare, one of Quinn's employees, telephoned several of the plaintiffs' patrons and informed them that he had seen them CT Page 3800 entering the plaintiffs' exotic dance clubs on the security television which was connected to the aforementioned video cameras. During the same period of time Debigare posted signs or banners, advertising Quinn's other "adult oriented;' establishments, on the premises of Danny's Adult Book World facing the plaintiffs' property. Debigare also I provided the plaintiffs' patrons with coupons to Kahoots and Carrie-Ann's.
The plaintiffs claim that the primary, if not sole, purpose of Quinn's camera installation was to intimidate and harass their customers and harm their businesses and, therefore, that such installation constituted an unfair or deceptive practice within the meaning of § 42-110b[1]. The court agrees.
The defendant Quinn has claimed that he installed the cameras purely for security reasons. However, the court does not find that claim to be credible. A disproportionately large number of the video cameras were placed on the side of Quinn's building which was nearest to Uncle Al's and Cousin Vinnie's with no camera surveillance of the entranceway to Quinn's store or its main parking lot. A security expert who testified at the trial described Quinn's camera configuration as "absurd" in terms providing optimum security surveillance of Quinn's premises.
A business is certainly permitted to install security cameras for its own protection and cannot be accused of an unfair practice if one or more of those cameras incidentally picks up activity on the premises of a nearby business. In this case the purpose of the camera installation was to interfere with the plaintiffs' business and the security benefits to the defendant Quinn's property was incidental. The number and placement of the video cameras described above, the temporal proximity of the camera installation to a complaint directed at Quinn by the plaintiffs, and the contacting of the plaintiffs' patrons concerning their appearance on Quinn's video cameras, indicates a primary intention to impact the plaintiffs' business.
At trial representatives of the plaintiffs testified that they had no evidence that Quinn's actions caused them a loss of profits. This may be due in part to the entry of a temporary injunction on April 22, 1994, under the terms of which the cameras were pointed away from the plaintiffs' front doorways. Not surprisingly, the plaintiffs also failed to present the testimony of any patron or prospective patron concerning the effect Quinn's cameras had on their willingness to enter the CT Page 3801 plaintiffs' exotic dance clubs. Nevertheless, the court finds that Quinn's cameras, when pointed at the entrance to the plaintiffs' exotic dance clubs, were intended to and probably would have a negative impact on the plaintiffs' business because they would deter certain prospective patrons from entering the clubs.
Connecticut General Statutes § 42-110g permits a suit to recover actual damages by "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b." Section 42-110g also permits the court to award attorneys' fees and punitive damages. The statute does not limit relief to actual damages because it permits the court to order, "in addition to damages or in lieu of damages, injunctive or other equitable relief." "Ascertainable loss" within the meaning of § 42-110g is not limited to demonstrable monetary loss. Hinchliffe v. American Motors Corporation,184 Conn. 607, 613, 440 A.2d 810 (1981).
"`[T]he plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law'; Hinchliffe v. American Motors Corp., supra,184 Conn. 617; including costs and attorney's fees; General Statutes 42-110(d); and punitive damages. General Statutes 42-110(a). In addition, if a court determines that a practice is unfair or deceptive under CUTPA, it `may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief.' General Statutes 42-110g(d). We have previously acknowledged the importance to the CUTPA scheme of the availability of attorney's fees and punitive damages. Hinchliffev. American Motors Corp., supra, 617-18. The significance of the broad equitable remedies authorized under CUTPA is underscored by the express language of 42-110g(d), which, in affording the court discretion to order injunctive and other equitable relief in lieu of damages, `contemplates plaintiffs' judgments which do not include an award of money damages.' Id., 618.[15] These comprehensive remedies, intended `to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts'; id.; are significantly broader than those generally available at common Law. "Associated InvestmentCo. v. Williams Assoc., 230 Conn. 148, 160, ___ A.2d ___ (1994).
The remedies available under CUTPA were designed to be broader than those available at common law and to provide redress CT Page 3802 for conduct which `without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;" or "is immoral, unethical, oppressive, or unscrupulous". Conaway v.Prestia, 191 Conn. 484, 492-93, 464 A.2d 847 (1983), quoting FTCv. Sperry Hutchinson Co., 405 U.S. 233, 244-45 n. 5,92 S.Ct. 898, 31 L.Ed.2d 170 (1972).
Failure to prove actual monetary loss to their businesses might prevent the plaintiffs from prevailing under the common law claim of tortious interference with a business relationship, but it does not prevent them from establishing that the Quinn's conduct was an unfair trade practice within the meaning of §42-110b. The court finds that Quinn's conduct described above did constitute an unfair trade practice.
The permanent injunction sought by the plaintiffs is granted. The terms of the injunction are set forth in the attached Order. The plaintiffs may also recover attorneys' fees and costs from Quinn. The amount of those fees will be determined at a subsequent hearing. The court finds that at all times Debigare was acting as an agent of Quinn, and, therefore, declines to award attorneys' fees against him. The court exercises its discretion not to award punitive damages.
By the court,
Aurigemma, J.