[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is one for damages based on a claim for a real estate commission allegedly owed by the defendant, Pim-John, Inc., to the plaintiff, Nancy Bell, d/b/a Brookside Properties. The defendant has filed a counterclaim alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA), G.S. §42-110a et seq, arising out of the plaintiff's representation of the defendant in the offering for sale of the defendant's real estate. A court trial on this matter was held on December 5, 1996, and the court finds the following facts.
On November 27, 1991, the plaintiff, a licensed realtor, CT Page 562-K entered into an exclusive listing agreement with the defendant to obtain a buyer for property located at 49 Laiho Road, Sterling, owned by the defendant and upon which the defendant was erecting a modular house. The listing agreement called for the defendant to pay the plaintiff a commission of six per cent of the sales price if the plaintiff procured a buyer ready, willing, and able to purchase the property for $110,900 or any other agreed price. The rate of commission was later reduced to five per cent.
The plaintiff found a prospective buyer, James A. Sparks, who was interested in the property. On February 7, 1992, Sparks and the defendant signed a purchase agreement obligating the defendant to sell the property to Sparks for $95,000. Sparks' purchase was dependent on obtaining a VA loan, and the purchase agreement specifically granted the defendant an opportunity to review the VA loan commitment papers before it had to sign any documents in conjunction with Sparks' application for the loan. The closing date was set in the contract for April 23, 1992, provided the purchaser secured financing by April 7, 1992. The contract stated that time was of the essence and no extensions need be afforded.
The VA required the defendant, as seller, to submit certain documents before committing to the loan for which Sparks had received preapproval. One such document requested that the CT Page 562-L defendant waive any right to enforce the purchase agreement or seek forfeiture of the deposit if the contract price exceeded the value of the property as determined by the VA's appraiser. Another document requested that the defendant certify that the construction of the home was "fully complete with minor exceptions".
The defendant refused to execute the waiver and certification. The defendant declined to modify his contract with Sparks to incorporate the waiver provision required by the VA. Also, Paul Pimental, part owner of the defendant corporation and builder of the modular home, felt that his certification that the home was "fully complete" would be untruthful and fraudulent because certain phases of construction were unfinished. No furnace had been installed, the well-pump was unconnected, and sliders for the deck needed installation.
On April 8, 1992, the defendant notified the plaintiff that the contract deadline for obtaining financing, April 7, 1992, had passed and that the purchase agreement had expired unconsummated. The defendant authorized the plaintiff to return the deposit to Sparks.
Although initially desirous of enforcing the purchase agreement on 49 Laiho Road, Sparks eventually found another home CT Page 562-M which he purchased for $95,000 using a VA loan in May 1992.
 I
The plaintiff contends that she found a buyer for the defendant's property ready, willing, and able to purchase the home at an agreed price of $95,000 and is entitled to a five per cent commission equaling $4,750. The court disagrees.
Sparks was only willing to purchase the home if he secured a $95,000 loan from the VA. The VA would lend Sparks that sum but only if the defendant agreed to waive certain rights the defendant had under the purchase agreement and vouch for facts which were untrue. Consequently, the purchaser found by the plaintiff was unwilling and unable to buy the property because he lacked the loan commitment.
The plaintiff cites Revere Real Estate, Inc. V. Cerato,186 Conn. 74, 80 (1982); William Raveis Real Estate, Inc v. Stawski,31 Conn. App. 608, 612 (1993); and O'Brien v. Rosenblatt, 4 Conn. Cir. 590, 592 (1967) for the proposition that a seller cannot cancel a sale and refuse to pay a commission when the seller's own actions disabled the buyer from consummating the sale. These cases are distinguishable from the present case because all of the cited cases involved fact patterns where the seller CT Page 562-N wrongfully refused to do that which the purchase agreement required him to do. In the present case, the seller refused to do that which he was under no obligation under the contract to do, viz. to modify the contract limiting its enforceability and to certify to a falsehood.
The burden of proving that Sparks was ready, willing, and able to purchase the property rests with the plaintiff. Lesser v.Altnacraig Convalescent Home, Inc., 144 Conn. 488, 491 (1957). The court holds that the plaintiff has failed to meet this burden, Judgment may enter for the defendant as to the amended complaint.
 II
As to the counterclaim, the defendant alleges a variety of purported practices by the plaintiff which the defendant argues constitute a violation of CUTPA. Under § 42-110g(a), violations of CUTPA are actionable if a party suffers "any ascertainable loss of money or property" as a result of the untoward practice. The burden is on the defendant to prove an ascertainable loss. Suarez v. Sordo, 43 Conn. App. 756, 772 (1986);Silver v. Jacobs, 43 Conn. App. 184, 193 (1996).
Ascertainable loss differs from actual damages. Hinchliffe v.CT Page 562-OAmerican Motors Corporation, 184 Conn. 607, 612 (1981). A loss is ascertainable if it is measurable even though imprecise. Id., 614. Here, the defendant has failed to prove ascertainable loss as a consequence of the plaintiff's conduct. The sale of 49 Laiho Road was never completed because of the defendant's own unwillingness to sign the required VA documents for Sparks. None of the plaintiff's behavior contributed to the failure to complete the transaction.
The defendant contends that the cost of defending against this suit constitutes an ascertainable loss compensable under CUTPA. Our Supreme Court, in dictum, has recently doubted that such expenses are recoverable under CUTPA. Rizzo Pool Co. V. DelGrosso, 232 Conn. 666, 685 (1995). CUTPA states, in § 42-110g(d) that "in addition to the relief provided in this section" the court may award costs and attorneys' fees. If the defendant's contention is correct, this language would be superfluous.
The court finds for the plaintiff on the counterclaim.
Sferrazza, J.