[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a landlord-tenant dispute, Plaintiffs occupied an apartment owned by the defendant on October 27, 1992. The agreed rent was six hundred fifty ($650.00) dollars per month. On or about November 1, 1992, the plaintiffs paid the defendant a security deposit in the amount of one thousand three hundred CT Page 3745 ($1,300.00) dollars. The $1,300.00 was provided to the plaintiffs by the Connecticut Department of Income Maintenance (DIM). On or about April 30, 1993, the plaintiffs vacated the said apartment pursuant to a stipulated judgment entered in housing court on March 30, 1993.
 II
Plaintiffs' Second Amended Complaint is in three counts. In the First Count plaintiffs allege that the defendant failed to return the said security deposit in violation of General Statutes, Section 47a-21(d)(1).
In the Second Count plaintiffs allege that the defendant fail to maintain the said security deposit in an escrow account as required by General Statutes, Section 47a-21(h) and that such failure, coupled with defendant's failure to return said security deposit with interest constituted a conversion of plaintiffs' property in violation of General Statutes, Section 52-564.
Plaintiffs' Third Count alleges that defendant's actions constituted unfair trade practices in violation of General Statutes, Section 42-110a et seq., the Connecticut Unfair Trade Practices Act ("CUTPA").
By way of relief, plaintiffs seek damages of twice the value of the security deposit ($2,600.00) plus interest, on the First Count; on the Second Count, violation of General Statutes, Section 54-564, plaintiffs seek treble damages ($3,900.00) plus interest; and on the Third Count, punitive damages and reasonable attorney's fees.
Defendant filed his Answer, denying any wrongdoing, and a Counterclaim, in two counts. In his First Count defendant alleges that between February 1, 1993 and April 30, 1993, plaintiffs occupied the said apartment without making payment for use and occupancy.
In his Second Count defendant alleges that plaintiffs breached a use and occupancy agreement entered into by the parties on or about March 1, 1992(sic) by reason of plaintiffs' failure to keep the premises in a safe and clean condition, failing to remove from the dwelling unit garbage, rubbish and other waste and willfully or negligently destroying, defacing, damaging or impairing the premises, requiring the defendant to expend large sums to effectuate restoration of the premises and CT Page 3746 to repair the damages thereto. By way of damages, defendant, plaintiff on the counterclaim, seeks $1,900.00 on the First count and on the Second Count an unspecified amount to cover the costs to repair and restore the premises damaged by the plaintiffs.
Plaintiffs answered defendant's Counterclaim denying any wrongdoing and by way of Special Defense alleging that during the time specified in the First Count of the counterclaim conditions of the premises were such that they materially affected the health and safety of the plaintiffs, including, but not limited to: vermin infestation; inadequate windows and window frames; chipped and peeling paint; and that pursuant to General Statutes, Sections 47a-4a and 47a-7, no rent was due. Defendant answered, denying this special defense.
A trial on the issues was had on November 4, 1997, at which all parties appeared and were represented by counsel.
 III
As to plaintiffs' Special Defense, the court finds that on or before February 8, 1993, plaintiffs complained of housing code violations to the office of building inspection and enforcement; that on or about February 8th, the said apartment was inspected by Code Enforcement Inspector, Carol Taylor; that on that date defendant was notified by letter from Director Alvorado of that office of three violations of the code and ordered to correct them within five days of receipt of said letter; that the corrections ordered were repair of window frames in various rooms of the apartment; replacement of a kitchen window sash and the making of that window weather tight; and the removal of peeling paint and the repainting of two areas. By letter dated March 4, 1993, Director Alvorado notified defendant he was in violation with respect to vermin and rodent infestation of the building containing the plaintiffs' apartment and was ordered to exterminate throughout the premises. Defendant was judged in full compliance with this order by March 10, 1993. On that date Inspector Taylor found partial compliance by defendant with the first order. He found full compliance at some time subsequent to March 10, 1993. Taylor testified and the court is persuaded, that the extermination was ordered on his own initiative and that plaintiffs had not complained to him of such infestation. Likewise, there had been no complaint by plaintiffs regarding lack of heat, nor did plaintiffs complain about a defective electrical fixture. Inspector Taylor considers lack of heat or CT Page 3747 defective electrical fixtures hazardous conditions, to be addressed on an emergency basis if found. He found no such conditions during his inspection of the subject apartment.
Based on the testimony and evidence presented, the court finds that plaintiffs have failed to establish, by a fair preponderance of the evidence, the allegations contained in their Special Defense to Defendant's Counterclaim.
The court finds defendant's testimony regarding alleged damage to the said apartment caused by plaintiffs inconclusive; and bills for costs of alleged repairs unreliable.
Based on the testimony and evidence presented, the court finds that plaintiffs have failed to establish, by a fair preponderance of the evidence, the allegations contained in the Special Defense of Defendant's Counterclaim.
 IV
As to the plaintiffs' First Count: it is undisputed that plaintiffs vacated the subject premises on or about April 30, 1993. On or about May 14, 1993, and pursuant to General Statutes, Section 47a-21(d)(2) plaintiffs notified defendant of their new address and requested return of their $1,300.00 security deposit.
Section 47a-21(d)(2) provides, in pertinent part, that:
 Within thirty days after termination of a tenancy, each landlord . . . shall deliver to the tenant or former tenant . . . either (A) the full amount of said security deposit plus accrued interest., or (B) the balance of the security deposit paid by such tenant plus accrued interest after deducting for any damages suffered by such landlord by reason of such tenant's failure to comply with such tenant's obligations, together with a written statement itemizing the nature and amount of such damages.
Plaintiffs entered into evidence a letter dated May 31, 1993, with defendant's name typed in below the text. The text reads: "You owe me three months rent which equals $1,950.00. So, I do not owe you a refund of the security deposit." The court finds this notification substantially complied with the notice requirements of Section 47a-21(d)(2). While it appears this notification may have been sent one day beyond the thirty day CT Page 3748 limit fixed by the statute, the deviation is so minor and the consequences to the plaintiff so minimal as not to trigger the sanctions the statute imposes for violation of any of its provisions.
Of much greater concern is whether the defendant was entitled to retain the said security deposit as damages for plaintiffs' failure to pay rent due and owing. It is undisputed that plaintiffs made no payments for rent or use and occupancy of the subject premises for the months of February, March and April, 1993. Defendant served notice to quit on plaintiff Cantrice Costin on February 11, 1993 for plaintiffs' failure to make the February rent payment. In such a situation, a tenant would be responsible from that time forward for paying for use and occupancy of premises until vacated, unless good reason existed for non-payment. On March 30, 1993, the defendant and plaintiffs entered into a stipulated judgment by which judgment for possession was entered in favor of Mr. Collins with a stay of execution until April 30th, with "no conditions". Plaintiffs argue that this phrase signifies a waiver by defendant Collins of any claim to payment for use and occupancy. Plaintiffs have failed to establish, by a fair preponderance of the evidence, such waiver by the defendant. Also, as indicated supra, plaintiffs failed to establish grounds for nonpayment pursuant to General Statutes, Sections 47a-7 and 47a-4a. The court finds that defendant did not violate General Statutes, Section 47a-21(d) by his refusal to return the said security deposit to the plaintiffs. The court concludes that defendant has established, by a fair preponderance of the evidence, that he was entitled to payment from plaintiffs for use and occupancy of subject apartment for the months of February, March and April, 1993 and that such use and occupancy was reasonably worth one thousand nine hundred fifty dollars.($1,950.00)
 V
In plaintiffs' Second Count the defendant is alleged to have failed to have deposited plaintiffs' security deposit in an escrow account pursuant to General Statutes, Sections 47a-21(h) and that this failure, coupled with defendant's failure to return plaintiffs' security deposit with interest upon termination of their tenancy, constituted a conversion in violation of General Statutes, Section 52-564.
Defendant admitted he placed plaintiffs' security deposit in CT Page 3749 a money market account held jointly by himself and his wife, which account he used both for business and personal expenses. The court finds that this account was not an escrow account as defined by General Statutes, Section 47a-21(2) and that defendant was in violation of the provisions of General Statutes, Section47a-21(h)(4). The court finds that in utilizing said monies for his personal use defendant violated his obligations as escrow agent for plaintiffs. It is no defense that defendant claims that sufficient monies were always in the account to cover plaintiffs' security deposit. It is no defense that plaintiffs, by refusal to pay rent or use and occupancy subsequently were found by this court to have forfeited said security deposit. One crucial distinction between an account such as that maintained here by defendant and a true escrow account is that an escrow agent such as defendant, is not to use the monies in such account for any purpose other than those specified in General Statutes 47a-21(h)(4). Further, General Statutes, Section 47a-21(c) provides that: "A security deposit shall be exempt from attachment and execution by the creditors of the landlord."; the account maintained by the defendant failed to accord the protection against such attachment as would a true escrow account.
Plaintiffs allege such conduct, coupled with defendant's failure to return said security deposit to plaintiffs, constituted a conversion. Plaintiffs seek treble damages. Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights,Devitt v. Manulik, 176 Conn. 657, 660. To establish a prima facie case of conversion, the plaintiffs must demonstrate that (1) the funds deposited in the said money market account were theirs; (2) that the defendant deprived them of said funds for an indefinite period of time; (3) that defendant's conduct was unauthorized, and (4) that the defendant's conduct harmed plaintiffs, DiscoverLeasing v. Murphy, 33 Conn. App. 303, 309. While the evidence clearly established that the funds in question included those of the plaintiffs and that the defendant's conduct was unauthorized, the court has found that defendant, following plaintiffs' vacating the said apartment, was entitled to retain plaintiffs' security deposit. Plaintiffs' claim of conversion was predicated on the failure of defendant to return the security deposit to plaintiffs following their vacating the premises. Because plaintiffs have failed to establish illegal retention by the defendant of said security deposit, their claim of conversion must fail. Therefore, the court declines to award plaintiffs treble damages pursuant to General Statutes, Section 52-564. CT Page 3750
 VI
Plaintiffs in their Third Count allege that defendant's actions violated the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes, Section 42-110a et seq. General Statutes 42-110b provides, in pertinent part: "Unfair trade practices prohibited. Legislative intent. (a) No person shall engage in . . . unfair or deceptive acts or practices in the conduct of any trade or commerce . . . General Statutes, Section42-110g, in pertinent part, provides that (a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by Section 42-110b may bring an action to recover actual damages." CUTPA is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit, Service Road Corporation v.Quinn, 241 Conn. 630, 637 (citations omitted). "It is well settled that in determining if a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily Judicial District of having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical or unscrupulous; (3) whether it causes substantial injury to consumers . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (citations omitted; internal quotation marks omitted), Fink v.Golenbock, 238 Conn. 183, 215.
The court finds that defendant violated General Statutes, Section 47a-21(h); and that in so doing, violated CUTPA. Defendant's practice in handling the security deposit of plaintiffs (and, admittedly, others) blatantly offended public policy as that policy is reflected in Section 47a-21(h) and (k)(2) and was both unlawful and unethical. Judge Holzberg, inMurphy v. Grigas (DOCKET NO. H-8903-3129SW), cited both by plaintiffs and defendant, characterized violations of Section47a-21(h) succinctly: "[R]efusal to adhere to these requirements strikes at the very heart of the security deposit law." And further: "The manifest purpose of the law is to ensure that the CT Page 3751 tenant's security deposit is secured and segregated so that it does not become the personal property of the landlord unless and until it is determined, at the end of the tenancy, that the landlord is entitled to retain the security as damages." Id.
The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking actual damages or equitable relief. Hinchliffe v.American Motors Corp., 184 Conn. 607, 615, 440 A.2d 810 (1981). An ascertainable loss is a "deprivation, detriment [or] injury" that is "capable of being discovered, observed or established" (Internal quotation marks omitted) Id. 613 "[A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known . . . Under CUTPA, there is no need to allege or prove the amount of the ascertainable loss" Id., 614,Service Road Corp. v. Quinn, supra, at 638, 639.
The court finds that defendant utilized plaintiffs' security deposit for his own purposes without the knowledge or acquiescence of plaintiffs and without compensation to the plaintiffs for said use, during the period November 1992 through April 1993, and thereby caused plaintiffs an ascertainable loss, entitling them to damages, costs and attorney's fees under CUTPA. Without showing more, plaintiffs are entitled to nominal damages.Rizzo Pool Co. v. Del Grosso, 232 Conn. 666, 689 (Berdon, concurring). One seeking actual damages in excess of purely nominal damages must prove the amount of those actual damages Id., 690, (citation omitted). "The award of nominal damages under CUTPA opens the door to other important remedies". Id. Under CUTPA a plaintiff is entitled to have the court consider awarding both punitive damages and attorney's fees, both sought by the plaintiffs here.
Based on the testimony and evidence presented the court finds that plaintiffs have established, by a fair preponderance of the evidence, that defendant has violated the Connecticut Unfair Trade Practices Act.
Plaintiffs are entitled to nominal damages. The court awards plaintiffs nominal damages in the amount of ($1.00); Taking into account the circumstances, including the harm suffered by the plaintiffs, the offense to public policy of defendant's conduct, the plaintiffs' failure to establish violations by the defendant of General Statutes, Section 47a-7 the court awards plaintiffs punitive damages in the amount of $2,000.00 and reasonable CT Page 3752 attorney's fees in the amount of $2,500.00.
Accordingly, judgment may enter for the defendant, James Collins, on the plaintiffs' First Count.
Judgment may enter for the defendant, James Collins, on plaintiffs' Second Count.
Judgment in the amount of one thousand nine hundred fifty ($1,950.00) dollars may enter for the defendant, James Collins, on the First Count of defendant's Counterclaim. Accordingly, defendant Collins is entitled to retain plaintiffs' security deposit in the amount of $1,300.00 and entitled to an offset against plaintiffs' recovery, of $650.00.
Judgment may enter for the plaintiffs, Cantrice and Darlene Costin on the Second Count of defendant's Counterclaim.
Judgment on the plaintiffs' Third Count may enter for the plaintiffs in the amount of three thousand eight hundred fifty one ($3,851.00) dollars.
Said $3,851.00 represents one dollar ($1.00) in nominal damages. $2,000.00 in punitive damages less an offset of $650.00 due defendant in the First Count of his Counterclaim; and attorney's fees of $2,500.00. Costs are also awarded to plaintiffs.
DOWNEY, J.