[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I INTRODUCTION
This dispute had its origin in a fire occurring on or about November 18, 1991, which damaged property owned by the plaintiffs at 232 Short Beach Road in the Town of East Haven. At the time of said fire, there was in effect an insurance policy (plaintiff's Exhibit C) between Anthony and Cynthia Calandro ("the Calandros") and the defendant, Allstate Insurance Company, Inc. ("Allstate"), insuring the property against loss.
On or about November, 19, 1991, the plaintiffs entered into an agreement with Meyer Biller by which the plaintiffs retained Biller Associates, Inc. ("Biller Associates"), to act as public adjuster in settling the plaintiffs' claim for fire loss. By July 31, 1992, the said claim for fire loss had not yet been settled. On that date, the property suffered further damage, a water loss as a result of a rain storm during which the temporary repairs made to protect the property following the fire loss proved inadequate. Following the water loss, the plaintiffs made a further claim to Allstate concerning said loss. Both claims went to appraisal.
On February 24, 1993, an award on the fire loss was entered, finding replacement damage in the amount of $40,963.98, with costs for temporary repair of $451.40 for a total of $41,415.38 with sound (actual cash) value of $36,499.70 (Biller Exhibit 47). A motion by the plaintiffs to vacate the award was denied on August 23, 1993. The plaintiffs have received payment for the fire loss, as well as for lost rental income.
On March 10, 1993, an award was entered on the water loss of July 31, 1992, finding replacement damage of $25,347.56 plus $200.00 in temporary repairs, for a total of $25,547.56 with sound (actual cash) value of $22,328.42 (Biller Exhibit 48). To date, there has been no payment to plaintiffs for said water CT Page 13142 loss, defendant Allstate claiming that the plaintiffs failed to take steps to protect the property, as they were required to do by the terms of the insurance policy.
 II PROCEDURAL HISTORY
This action was initiated by a complaint filed on behalf of the plaintiffs against Allstate in August, 1992. The complaint was filed by the plaintiffs' then attorney, Jon Biller. The complaint was in three counts, alleging breach of contract, breach of duty of good faith and fair dealing and unfair trade practices by Allstate. Allstate filed its motion to implead Biller Associates, which was granted on February 14, 1994. Allstate also filed a third party complaint against Biller Associates, of which one count, alleging violation by Biller Associates of the Connecticut Unfair Trade Practices Act (CUTPA), survives. Biller Associates, by way of counterclaim, alleged breach of contract by the plaintiffs Calandro by reason of the plaintiffs' failure to pay a fee for services rendered in adjusting the plaintiffs' claims.
In December 1996, the plaintiffs, now represented by Attorney Frank J. Kolb, Jr., filed their amended complaint. As amended, the claims against Allstate for breach of duty of good faith and fair dealing and for violation of CUTPA are abandoned.
A hearing on this matter opened on November 12, 1997, continued on various dates to May 26, 1998 when all parties rested, and to July 15, 1998 for filing of post-trial memoranda.
 III CLAIMS
This amended complaint is in six counts. The first count alleges breach of contract by Allstate. The second count alleges breach of contract by the defendants Meyer Biller and Biller Associates. The third count alleges negligence by Meyer Biller and Biller Associates. The fourth count alleges violation of CUTPA by Meyer Biller and Biller Associates. The fifth and sixth counts are as against Jon D. Biller dba The Biller Law Firm. The court (Ripley, J.) has stayed action on the fifth and sixth counts pending the outcome of the case in chief. CT Page 13143
In the first count, the plaintiffs have alleged breach of contract by Allstate by reason of Allstate's failure to pay the appraiser's award for the water loss of July 31, 1992. Allstate denied liability and by way of special defense, alleged that the plaintiffs and their agents failed, following the initial fire loss, to take steps to protect the premises from further damage, as required by the insurance contract between the parties.[1]
The plaintiffs' second count, directed at Meyer Biller and Biller Associates, alleges said defendants: failed to promptly and accurately communicate terms and conditions of said insurance policy to the plaintiffs; failed to promptly and adequately present the plaintiffs' claims to Allstate; failed to insure that the fire-damaged premises were adequately protected from the elements, as they had agreed to do; failed timely to settle the fire loss by failing to convey settlement offers or proceed to appraisal; and failed to properly and accurately communicate to the plaintiffs all terms of offers of compromise made by Allstate. The plaintiffs' third count, alleging negligence by Meyer Biller and Biller Associates, reiterates, for the most part, and without addition, the acts and omissions alleged in the second count. The plaintiffs' fourth count alleges that Meyer Biller and Biller Associates violated CUTPA in that; they intentionally and negligently delayed presentation of the plaintiffs' claim to Allstate; they attempted to adjust for damages caused by the July 31, 1992 loss while not being contracted for same in violation of Conn. General Statutes § 38a-724; they retained an attorney to act on behalf of the plaintiffs without the prior approval of the plaintiff; they indicated to the plaintiffs that they would waive any and all fees for their services and, when the plaintiffs chose to hire another attorney to represent the plaintiffs against the defendants, made a claim for the previously waived fee.
Meyer Biller and Biller Associates, denied liability and by way of counterclaim alleged breach of contract by the plaintiffs by reason of the plaintiffs' failure to pay said defendants for services rendered to the plaintiffs pursuant to the agreement between the parties. The plaintiffs denied liability and raised four special defenses.
Allstate in the first count of its revised second amended third-party complaint alleges that if plaintiffs were injured in the manner alleged by plaintiffs in their claim against Allstate, CT Page 13144 such injuries were proximately caused by the conduct of Biller Associates and that such conduct constituted unfair or deceptive acts or practices in violation of CUTPA.
In summary, the plaintiffs and Allstate claim that because of misconduct by Meyer Biller and Biller Associates, there was undue delay in resolving the fire loss of November 18, 1991. As a result of that delay, the plaintiffs suffered an additional loss on July 31, 1992. Had the fire loss been resolved and the repairs on the damaged dwelling been completed, there would have been no water loss. At the time of the trial the plaintiffs limited their claim against Allstate to violation of contract by reason of Allstate's failure to pay the plaintiffs the amount due them by virtue of the water loss award. Allstate claims that Biller Associates, since its acts were the proximate cause of any loss suffered by the plaintiffs, should contribute its proportionate share of any sums paid to the plaintiffs by Allstate and any sums expended in the defense of the plaintiffs' claims. Both the plaintiffs and Allstate claim that Meyer Biller and Biller Associates violated CUTPA. Biller Associates and Meyer Biller claim the plaintiffs have failed to pay a fee owed Biller Associates for services rendered.
 IV BACKGROUND
Biller Associates is a firm licensed, pursuant to General Statutes, § 38a-769, to perform services for clients as public adjusters, as defined by General Statutes § 38a-723. Meyer Biller is a founder and principal of Biller Associates. Although Meyer Biller as an individual is a named defendant in this action, the court finds that at all times pertinent to this matter Meyer Biller acted on behalf of Biller Associates and that any acts or omissions of Meyer Biller with regard to this matter are attributed to Biller Associates. At the time of the fire giving rise to this action Larry Biller, a son of Meyer Biller, was president of Biller Associates. Attorney Jon Biller, a son of Meyer Biller, was counsel to Biller Associates. Jon Biller maintained law offices at the same address as Biller Associates and his law shared office space and equipment with Biller Associates, Anthony Calandro was an old acquaintance of Meyer Biller and considered him a friend.
At the time of the events pertinent to this matter Glenn CT Page 13145 Boudreau was the claims adjuster assigned by his employer, Allstate, to settle the plaintiff's claim. Myran Gapski was Boudreau's supervisor. Richard McKenna, president of Paul C. Higgins, Inc., was an insurance adjuster, who performed services for Allstate and was, on occasion, named by Allstate as appraiser when claims went to appraisal. Over the years Gapski, Boudreau and McKenna had at various times interacted with Meyer Biller in efforts to settle claims or, when settlement proved impossible, to refer claims to appraisal. Testimony revealed that by the time the plaintiffs filed their claim for fire loss with Allstate, considerable distrust had developed between Meyer Biller on the one hand and Gapski and Boudreau on the other. Meyer Biller had also become firmly convinced that Richard McKenna could not function as an independent and disinterested appraiser in a matter in which Allstate was an insurer, because McKenna derived income from Allstate on an on-going basis. Thus, against that backdrop Allstate's representatives, on one hand, and Meyer Biller, on the other, entered into settlement negotiations. The atmosphere of these negotiations quickly became acrimonious. The task of the adjusters is to reach agreement on the scope of damage (what items were damaged by the event; which items must be replaced, which repaired); then the adjusters agree on the full replacement cost. (FRC) If there is an actual cash value (ACV) option,[2] the adjusters must reach agreement on the amount of "depreciation" to be withheld for items; the depreciation amount would be deducted from the full replacement cost amount, the insured would receive a check representing the difference and the insurer would release depreciation amounts to the insured if and when satisfied the items in question had been repaired or replaced as agreed upon. If agreement on adjusting the loss cannot be reached, the claim is submitted to appraisal. Each side names an appraiser, who must be "competent and disinterested". The appraisers choose an umpire and the appraisers and umpire seek to agree on an award. An award requires agreement by two of the three participants in the appraisal.
 V FINDINGS OF FACT
Meyer Biller and Boudreau inspected the site together, in January, 1992. Meyer Biller's initial estimate, corrected, was $68,742.84. (Plaintiff's Exhibit O). Boudreau's was $29,556.15 FRC and ACV $25,318.63 (Allstate Exhibit SS) Early on, a major subject of contention related to damaged floor joists. Meyer CT Page 13146 Biller insisted they be replaced; Boudreau insisted that repair by "sistering" was the appropriate course. There was significant difference in cost associated with these two courses of action. Meyer Biller also included repairs to the den or family room of $8,135.24, including replacement of 1063 square feet of wall paneling.[3] Boudreau estimated that cleaning, waxing and oiling was all that was needed, at a cost of a few hundred dollars.
Boudreau also proposed, as an alternative, that First General Services, Inc., ("First General") do the repairs pursuant to Allstate's estimate.
By letter dated February 17, 1992, Meyer Biller rejects Allstate's initial offer, reiterates his position on the scope of damage, demands on behalf of his clients that the claim be submitted to appraisal and names Larry Biller as the plaintiff's choice as appraiser.
Meyer Biller also indicates repair by First General would be acceptable, so long as Allstate agreed to Biller's scope.
By letter dated February 27, 1992, Myran Gapski of Allstate responds, rejecting the choice of Larry Biller, on the ground that Larry Biller was not disinterested. Gapski demands appraisal and names Richard McKenna as Allstate's chosen appraiser. Meyer Biller rejects McKenna as not disinterested and a dispute as to who should serve as appraisers continues until September 4, 1992 when Jon Biller, on behalf of the plaintiffs, names David Kronberg as appraiser and "under protest" accepts Allstate's named appraiser, McKenna.
In the meantime, efforts continued to settle the claim through negotiation. By April, Larry Biller is active in trying to adjust the claim. Attorney Jon Biller, stating that he represented the Calandros, enters the negotiations with Allstate on or about April 8th, and on or about April 21st, in a conversation with Boudreau, suggests that Allstate agree to the replacement of the floor joists, apply the appropriate depreciation and settle the loss on an actual cash value basis; if the Calandros thereafter failed to replace the joists, they would not be entitled to the withheld depreciation on same (Biller Exhibit 39, p. 9). Boudreau agreed to consider the proposal and asked Jon Biller to check with Larry or Meyer Biller regarding this proposal (Id. pp. 9-10). By April 28, 1992 Larry Biller had generated a replacement cost estimate (Allstate CT Page 13147 Exhibit K) in which Meyer Biller's estimate of $8,135.24 had been replaced by an estimate of $295.05 for cleaning and painting in the family room. On April 29th, Gapski, Boudreau and Larry Biller meet at the site and Gapski records: "We reached an agreement on the scope of the damages and revised our estimate". (Biller Exhibit 39, p. 10) Allstate agreed to replace the joists in the boiler/utility room. This is reflected in Allstate's estimate generated on May 8th (Allstate exhibit N).
By the end of April, agreement apparently had been reached as to the scope of damage. Progress had been made in bridging the gap between Allstate's and Biller Associates' damage estimates in terms of dollar value. Larry Biller's April 28th estimate totaled $47,296.08. It appears he contemplated adjusting this figure as low as $40,936.98 as shown by notes made on a copy of his estimate (Biller exhibit 35). (The document has a hand-written note: "For discussion purposes only"). Allstate's estimate, generated following the April 29th meeting, was for a replacement cost of $36,875.64, with an actual cash value of $31,234.99.
On May 4, 1992, tragedy intervened; Larry Biller was murdered at the Biller Associates office in Chimney Square in Hamden.
Initially, this terrible event did not appear to have a negative impact on the settlement efforts. Meyer Biller, grieving, was not in the office on a regular basis. The employees of Biller Associates, under Jon Biller's direction, tried to take over Larry Biller's responsibilities and keep the business functioning. Al Tancreti, an adjuster employed by Biller Associates, took over the Calandros' file and continued negotiations with Allstate. Tancreti testified that at this point he, too, believed that Allstate and Biller Associates had reached an agreement on the scope of damage and that he was very confident the loss would settle. Tancreti visited the loss site, and, using Larry Biller's estimate as a basis, generated his own estimate of $46,726.28, including $267.10 for the den/family room. During the month following Larry Biller's death there were discussions between the adjusters on the possibility of settling in the area of $40,000.00
In June certain ominous developments emerged. On June 5th Boudreau records that Al Tancreti stated he'd spoken to Meyer Biller, who said that nothing under $50,000 was acceptable. Al advised he convinced Meyer that a settlement for $40,000 would be fair. Boudreau said he disagreed with that offer of settlement CT Page 13148 and would send a letter explaining his position. Boudreau followed with his letter dated June 10th (Allstate exhibit T) reciting his conversation with Tancreti, specifying his understanding of the agreement on scope and proposing the alternative of having First General do the repairs per Boudreau's "estimate and last offer" of $36,875.64 FRC. Thereafter, the situation deteriorated rapidly. By letter dated June 12th (Allstate Exhibit II), Gapski wrote to Jon Biller, stating, inter alia, that Tancreti had told Gapski that Tancreti had been chosen by Biller Associates as appraiser. Gapski stated that Allstate would accept neither Tancreti nor any other member of Biller Associates as an appraiser on a claim that Biller Associates was handling. By letter dated June 19th (Allstate Exhibit U) Jon Biller replies, indicating that it was unclear as to what scope agreement Gapski or Boudreau referred to; stating that "it is clear that a settlement is not possible", naming Tancreti as the Calandros' appraiser; offering to withdraw Tancreti if Allstate withdrew McKenna as appraiser; naming Peter Gostyla as appraiser if Allstate did withdraw McKenna's name. Finally, Jon Biller indicates that Mr. Calandro is more than willing to accept the First General repair option "provided First General restores the property to its condition before the fire". By letter to Jon Biller dated June 25th, (Allstate exhibit JJ) Gapski references a conversation of that date, in which, Gapski writes, Jon stated that there was no agreement on scope; asks Jon what amount he feels is required for the appropriate and proper repair of the subject property and asks for documentation to support the number. Finally, Gapski encloses a letter dated June 25, from First General (Allstate KK) agreeing "we can complete the scope" outlined in the Allstate estimate "for the amount allowed by Allstate". By letter to Gapski dated July 9, 1992 (Allstate P), Jon Biller replies. Jon indicates that in the conversation of June 25th, he offered three alternatives to Allstate to resolve the matter: 1) Allstate to increase its offer "to those numbers arrived at during your meeting with Larry Biller and subsequent conversation with Alan Tancreti"; 2) Allstate engage the services of any contractor, including First General to repair the property to the condition it was in prior to the fire.; 3) go to appraisal. Under the heading "Scope Differences" Jon Biller listed repair work he deemed needed to be done in addition to those items included in the Allstate estimate, in order to "restore the property to its pre-fire condition". Included in the additional work were extensive repairs to the family room, as previously included in Meyer Biller's initial estimate and later dropped from subsequent Biller Associates estimates. On receipt CT Page 13149 of this letter, Gapski concluded the parties were back at "square one" and consulted counsel with regard to filing a motion to compel appraisal.
 VI
It is in this tangled skein of negotiations that the plaintiffs and Allstate discern a course of conduct by Biller Associates that was the proximate cause of the water loss of July 31, 1992. The conduct of Biller Associates resulted, they assert, in undue delay in resolving the fire loss of November 18, 1991. Had the fire loss claim been resolved in timely fashion, repairs to the premises would have been completed by July 31, 1992 and no water loss would have ensued.
It is axiomatic that each loss suffered by am insured is unique. There is no set deadline by which time adjusters must settle claims nor is there a set time by which parties must demand an appraisal, nor an immutable deadline, once an appraisal is undertaken, by which an award must be made.
In this case, Allstate and Biller bickered over the naming of appraisers for many weeks. But during that same time, parallel to the appraisal dispute, the parties were attempting to negotiate a settlement and both sides were hoping to avoid appraisal. The court cannot infer that, had Biller Associates named an appraiser acceptable to Allstate and withdrawn its opposition to McKenna as Allstate's appraiser, in the Spring of 1992, an appraisal would have been completed, an award made and repairs to the damaged premises would have been completed by July 31, 1992. The court notes in passing that after Biller Associates named Kronberg as appraiser and withdrew its opposition to McKenna some five months elapsed before the fire loss award was made.
Similarly, with regard to a negotiated settlement. Apart from any misconduct by Biller Associates and apart from the poisonous atmosphere in which the negotiations were conducted there were valid issues disputed by the parties. Differences over the scope of the damage were legitimate and legitimately disputed at least until the end of April, 1992, when Allstate adopted Meyer Biller's original position with regard to the floor joists and the scope of the damage to the family room appeared to be a non-issue, having been dropped from the Biller Associates estimates. The parties never reached agreement on the dollar amounts, FRC or ACV, needed to settle the claim. By June, Allstate was standing CT Page 13150 by its estimate of $36,875.64 FRC with ACV of $31,234.99; Biller Associates were proposing a "walkaway" (cash) payment around $40,000. The court cannot attribute the parties' failure by June to close the dollar gap to the misconduct of Biller Associate's, nor conclude that, but for the misconduct of Biller Associates, a settlement figure would have been reached, the monies paid to the plaintiffs and repairs effected in time to avoid the water loss of July 31, 1992.
Similarly, with regard to the proposal to have First General do the necessary repairs to the subject premises. This proposal, first raised in February, 1992, lay dormant while the parties wrangled over the scope of damage, resolution of which was a critical prerequisite to negotiations on the First General option. Following the apparent agreement on scope and the difficulty encountered in closing the dollar gap, the parties turned their attention to the First General alternative. Valid differences remained on this issue as late as June. Allstate was concerned that the plaintiffs might seek repairs outside the agreed scope of damages. Biller Associates wanted assurance that the dwelling would be restored to its pre-fire condition. The court cannot infer that, but for the misconduct of Biller Associates, the parties would have agreed on the work to be done by First General, and that repairs would have been effected by July 31, 1992, so as to avoid the water loss suffered that day.
Whatever the merit of the plaintiff's and Allstate's claims of misconduct by Meyer Biller and Biller Associates, the plaintiffs and Allstate, the third party plaintiff, have failed to prove, by a fair preponderance of the evidence, that misconduct by Biller Associates was the proximate cause of the plaintiffs' loss of July 31, 1992. However, the plaintiffs have established that the defendant, Biller Associates, has by its actions, breached its duty to the plaintiffs of good faith and fair dealing and that such actions constituted professional negligence.
 VII ALLEGATIONS OF MISCONDUCT
The allegations of misconduct by Meyer Biller and Biller Associates during the adjustment process include: CT Page 13151
 — attempts to include pre-existing damage in claims for fire loss;
 — resisting Allstate's proposal that damaged joists be sistered;
 — rejecting Allstate's offer to arrange for improved temporary repairs;
 — insistence on naming employees of Biller Associates as appraisers;
 — misrepresenting to Allstate the position of plaintiffs in claiming that Anthony Calandro insisted on a settlement figure of $40,000.00;
— failure to communicate Allstate offers to the plaintiffs;
 — repudiation by Biller Associates of prior agreements, notably those as to scope of damages;
 — pursuing Biller's own agenda by making this claim a "test case" in an effort to establish the propriety of naming employees of Biller Associates as appraisers on claims where Biller Associates was the public adjuster;
 — failure by Biller Associates to communicate Allstate's offer of a "global resolution," of all claims, including the water loss, to the plaintiffs;
 — attempting to dictate an outcome that would result in a settlement check rather than damage repair, such as the "First General" option; all to facilitate Biller Associates' collection of its fee; misrepresentation to the plaintiffs of the terms of their insurance policy;
 — concealing from the plaintiffs that Larry Biller was the president and employee of Biller Associates;
 — representing to Allstate that Al Tancreti and Peter Gostyla were chosen as appraisers by the plaintiffs, which was not the case;
 — misrepresenting to the plaintiffs that McKenna was an employee of Allstate;
CT Page 13152
 — retaining Jon Biller as attorney for the plaintiffs when in fact he represented Biller Associates, coupled with failure by Biller Associates to disclose such dual representation.
 — use by Meyer Biller of personal stationery to create the impression he was adjusting the claim independently of Biller Associates;
 — submission by Biller Associates of multiple bills for temporary repair work done by All-Decks Co.
 — altering a document by crossing out Richard McKenna's name on a proposed appraiser's release.
 VIII
Based on the evidence and testimony presented, the court finds;
(1) that the plaintiffs have established, by a fair preponderance of the evidence, that on two occasions in the course of the efforts to resolve the settlement of the claim at issue, the defendant Biller Associates named an employee of Biller Associates as appraiser, each employee being active as an adjuster of said claim; and that naming such individuals, namely Larry Biller and Alan Tancreti was improper under the circumstances, as was the failure promptly to withdraw such nominations when objected to by the insurer. The court recognizes that Meyer Biller, in naming Larry Biller as appraiser, and opposing Allstate's nomination of Richard McKenna, outlined reasons for so doing to Anthony Calandro and obtained Calandro's consent. The court finds that Meyer Biller failed to explain adequately the risks involved in these actions in terms of delaying and complicating resolution of the claim. Nor did Meyer Biller advise the plaintiffs that the naming of Larry Biller could reasonably be construed as violating the insurance policy's requirement that the plaintiff appoint a "disinterested" appraiser. The court concludes that Anthony Calandro, inexperienced in the appraisal process and relying on the judgment of Meyer Biller, did not give his informed consent to the naming of Larry Biller as appraiser. As to the naming of Alan Tancreti as appraiser, the court finds that the plaintiffs were not consulted and had no knowledge that Biller Associates named Tancreti as plaintiff's appraiser. CT Page 13153
Biller Associates' citation to Linford Lounge, Inc. v.Michigan Basic Property Insurance Association, 77 Mich. App. 710.,259 N.W.2d 201, is unavailing. Linford can be distinguished from the instant case. In Linford, the plaintiff had contracted with Kramer, a public adjuster, to adjust plaintiff's claim. Later, the plaintiff appointed Kramer to serve as appraiser on the loss. It was undisputed that Kramer's contract to adjust the loss had, unlike Biller Associates' contract, been canceled before or at the time he was appointed as the plaintiff's appraiser. In the instant case, Biller Associates' contract with the plaintiffs was never canceled, and was in effect at the time Biller Associates named its employees as appraisers. The court finds that the conduct of Biller Associates, as described, constituted a breach of Biller Associates' duty to the plaintiffs Calandro of good faith and fair dealing and constituted professional negligence by Biller Associates.
(2) that the plaintiffs have established, by a fair preponderance of the evidence, that the defendant, Biller Associates, in the course of adjusting this claim, misrepresented facts in stating to employees of Allstate that the plaintiff, Anthony Calandro, insisted on a settlement figure of forty thousand dollars, when Calandro had not so insisted; to the detriment of the plaintiffs. The court finds that such conduct by Biller Associates constituted a breach of Biller Associates' duty to the plaintiffs Calandro of good faith dealing and constituted professional negligence by Biller Associates.
(3) that the plaintiffs have established, by a fair preponderance of the evidence, that the defendant, Biller Associates failed to convey to the plaintiffs Calandro, in timely fashion, offers made by Allstate, notably the offer of $36,675.24 FRC (ACV $31,234.99) and the accompanying alternative offer that Allstate would contract to have First General Services, Inc. repair the fire loss damage, per Allstate's estimate, as recorded in Boudreau's letter dated June 10, 1992 (Allstate Exhibit T). The contract between Biller Associates and the plaintiffs contained the following terms: "SETTLEMENT OFFER: We shall forward to you any written settlement offer from the insurance company. ("plaintiff's exhibit A") Anthony Calandro testified he was not made aware of these offers and that this offer to have First General do the repair would have been welcomed by him. The records of the Biller Law Firm show no contacts with the plaintiffs during the crucial period May and June of 1992. The CT Page 13154 argument that Biller Associates in the person of Alan Tancreti, informed Jon Biller, the Calandro's attorney, of Allstate offers, thus satisfying the requirement that a public adjuster notify his client of offers by an insurer, is without merit and merely highlights the conflict inherent in Jon Biller's role in the settlement of this claim. Following his brother's death on May 4th, Jon Biller, counsel for Biller Associates and attorney for the Calandros, took over direction of Biller Associates. At that point he was wearing three hats. It is difficult to determine in which capacity he was acting at any given moment. However, Jon Biller, as acting director of Biller Associates, having taken the lead in efforts to settle the fire loss claim, was obligated to notify the Calandros of the offers referred to, supra.
The court finds that such failure by Biller Associates constituted a breach of its contract and of its duty to the plaintiffs Calandro of good faith and fair dealing and constituted professional negligence by Biller Associates.
The court finds, however, that the plaintiffs have failed to establish the amount of damages and will award nominal damages on the plaintiffs' second and third counts.
The court finds, further, by a fair preponderance of the evidence, that the three actions enumerated, supra, and each of them, constituted a violation by the defendant, Biller Associates, of the Connecticut Unfair Trade Practices Act, General statutes, Sections 42-110a et seq.
 IX THE CALANDROS' CUTPA CLAIM AGAINST BILLER ASSOCIATES
The elements of a CUTPA claim are well established. General statutes, Section 42-110b states: No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. General statutes, Section 42-110g provides that "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by Section 41-110b, may bring an action . . . to recover actual damages . . . The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper." CT Page 13155
"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other business persons] . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three (citations omitted). CUTPA reflects a public policy that favors remedying wrongs that may not be actionable under other bodies of law (citation omitted). It is not, therefore necessary to find [a CUTPA defendant] liable for some underlying actionable wrong in order to support a CUTPA claim.
"[A] violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA" (citations, internal quotation marks omitted), Willow Springs CondominiumAssociation, Inc. v. Seventh BRT Development Corporation,245 Conn. 1, 43.
Not every consumer injury is legally "unfair". To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided, (citations omitted), A-G Foods, Inc. v. Pepperidge Farm, Inc.,216 Conn. 200, 216.
The court has found that Biller Associates, on two occasions, named an employee as appraiser on a claim which Biller Associates had contracted to adjust, and failed promptly to withdraw said names when challenged and that such action was improper, and violated Biller Associates' duty of good faith and fair dealing, as, in the circumstances neither employee could be "disinterested". The court finds that such conduct offends public CT Page 13156 policy and is unethical.
The court has found that Biller Associates, in the course of adjusting the plaintiff's claim, made a misrepresentation of fact concerning an alleged demand for $40,000 by the plaintiff, Anthony Calandro. The court finds this action by Biller Associates to have been deceptive.
The court has found that Biller Associates failed to convey a written offer of settlement from Allstate to the plaintiffs, thus breaching Biller Associates' contract with the plaintiffs and its duty to the plaintiffs of good faith and fair dealing. The court finds this conduct to be unscrupulous and contrary to public policy.
The court finds, by fair preponderance of the evidence, that the unfair and deceptive acts cited, supra, caused substantial injury to the plaintiffs Calandro, in that such acts delayed resolution of the plaintiff's claim, caused additional expenditure by Anthony Calandro of time and effort in protecting the subject premises, caused the plaintiffs additional worry and aggravation, loss of the use of the damaged property, as well as loss of money in an undetermined amount.
The ascertainable loss requirement of Section 42-110g "is a threshold barrier which limits the class of person who may bring a CUTPA action seeking actual damages or equitable relief,"Hinchcliffe v. American Motors Corp. , 184 Conn. 607, 615,440 A.2d 810 (1981). An ascertainable loss is a "deprivation, detriment [or] injury" that is "capable of being discovered, observed or established", (Internal quotation marks omitted) Id., 613. "[A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known . . . Under CUTPA there is no need to allege or prove the amount of the ascertainable loss." Id., 614. A plaintiff need not prove a specific amount of actual damages in order to make out a prima facie case [under CUTPA]." Id., 612-13, Service Road Corporationv. Quinn, 241 Conn. 630, 638-39. Based on the evidence presented, the court finds that the plaintiffs suffered an ascertainable loss as a result of the unfair trade practices of the defendant, Biller Associates. The court finds that the plaintiffs have failed to establish the amount of actual damages suffered as a result of Biller Associates' unfair practices.
Without showing more, the plaintiffs are entitled to nominal CT Page 13157 damages, Rizzo Pool Company v. Del Grosso, 232 Conn. 666, 689
(Berdon, concurring). One seeking actual damages in excess of purely nominal damages must prove the amount of those actual damages. Id., 690 (citation omitted). "The award of nominal damages under CUTPA opens the door to other important remedies." Id. Under CUTPA the plaintiffs are entitled to have court consider awarding both punitive damages and attorney's fees.
The court finds that the plaintiffs, have failed to establish the amount of actual damages suffered as a result of Biller Associates' unfair trade practices. Accordingly, the court will award the plaintiffs nominal damages in the amount of one dollar ($1.00) as against Biller Associates.
The court concludes that the unfair trade practices of Biller Associates constitute a course of conduct sufficiently egregious to warrant the award to the plaintiffs of punitive damages in the amount of eight thousand dollars ($8,000.00)
In pertinent part, Section 42-110g(d) states: "[T]he court may award to the plaintiff . . . costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery." The court concludes that, in the circumstances of this case, an award to the plaintiffs of attorney's fees is warranted. In setting reasonable attorneys' fees under CUTPA, the court should consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases (citations omitted).Thames River Recycling, Inc. v. Gallo, 50 Conn. App. 767, 801, fn 19. Applying these considerations to this case, the court will award reasonable attorneys' fees of seven thousand, five hundred dollars ($7,500.00).
 X ALLSTATE'S CUTPA CLAIM AGAINST BILLER ASSOCIATES
CT Page 13158
The defendant, Allstate, in the surviving First Count of its Revised Second Amended Third Party Complaint, alleges that Biller Associates, by its acts and omissions, violated CUTPA, as a result of which Allstate suffered an ascertainable loss. Allstate alleges that if the plaintiffs were injured in the manner alleged in their claim against Allstate, then such injuries were proximately caused by the conduct of Biller Associates. As noted at time of trial, the plaintiffs Calandro limited their claims against Allstate to one count of breach of contract by reason of Allstate's failure to pay the plaintiffs the monies due them pursuant to the appraisal award of March 13, 1993.
Allstate's further claim was that Biller Associates' improper conduct was the direct and proximate cause of the water loss of July 31, 1992; hence Biller Associates should be held liable for any recovery by the plaintiffs from Allstate in connection with said water loss. This court has found to the contrary, supra.
Allstate also claims that Biller Associates tortiously interfered with the contract between the plaintiffs Calandro and Allstate, and engaged in acts of misrepresentation and concealment, such conduct constituting unfair and deceptive acts in violation of CUTPA. The specific acts cited in its post-trial memorandum are: that Biller Associates sought to set up a "test case" to have a court determine the propriety of Allstate's use of Richard McKenna as appraiser; that Biller Associates sought to use the Calandros' claim to set a precedent with Allstate and other insurance companies that it could name one of its adjusters or employees to act as an insured's appraiser when Biller Associates had previously been retained to act as an insured's adjuster, that Biller Associates sought to dictate the method of resolution of the outcome of the claim to ensure that a settlement check would be issued, from which Biller Associates could collect its fee, rather than allowing an "Allstate Contractor" to do the work and be paid directly. The court finds that Allstate has failed to establish, by a fair preponderance of the evidence, these allegations and failed to establish tortious interference by Biller Associates with the contract between Allstate and the Calandros.
The unfair trade practices by Biller Associates found by this court were violations of CUTPA in relation to the plaintiffs Calandro, and any injury suffered by Allstate was incidental to such unfair trade practices. Biller Associates' unfair trade CT Page 13159 practices breached its duty to the Calandros as its clients. No such duty was owed Allstate.
The court finds that Allstate has not demonstrated an ascertainable loss permitting it to pursue a CUTPA claim against Biller Associates. Allstate asserted its actual damages consisted of "fees and costs for lawyers, appraisers and umpire resulting from the unnecessary appraisal proceedings and litigation related thereto". Allstate has failed to establish, by a fair preponderance of the evidence, that said appraisal proceedings and litigation were "unnecessary", much less vexatious litigation. The expenditures claimed as damages are, in fact, routine costs of doing business. There was no showing that the plaintiffs' motion to vacate the fire award was vexatious litigation. Allstate chose to file its motion to compel appraisal. If such action had the effect of pushing Biller Associates to withdraw its objection to McKenna, well and good, but Allstate failed to establish that, but for Biller Associates' unfair trade practices, the losses at issue would have settled without appraisal.
Assuming, arguendo, Allstate had met its burden of establishing an ascertainable loss the court is persuaded that Allstate could not satisfy the second prong of the "substantial injury" test. Unfair trade practices claims against public adjusters such as Allstate asserts here, would, if sanctioned by the courts, encourage public adjusters to resolve claims in haste, even on terms unfavorable to their clients; and to avoid appraisal when such appraisal might be in their clients' best interests, lest the public adjuster find himself faced with a claim of unfair trade practices for refusal to settle a claim on the insurer's terms. The harm to consumers in general would seem to outweigh any benefit to any insurer in a given case and would be contrary to public policy. Allstate has failed to establish by a fair preponderance of the evidence that Biller Associates is liable to Allstate for violation of CUTPA.
Accordingly, judgment on Allstate's third-party complaint will enter for Biller Associates and against Allstate.
 XI PLAINTIFFS' BREACH OF CONTRACT CLAIM AGAINST ALLSTATE
The plaintiffs claim that the defendant Allstate breached the CT Page 13160 terms of its contract with the plaintiffs by reason of Allstate's failure to pay the plaintiffs the sums due them pursuant to the water loss appraisal award made on March 10, 1993. Allstate by way of special defense counters that said water loss resulted from the failure of the plaintiffs and their agents to take steps to protect the premises, as required by paragraph 3b) of Section 1 Conditions, of the said contract.
Following the fire of November 18, 1991, and after consulting with Meyer Biller, Anthony Calandro retained the services of Ken Barber of All-Decks Co. to effect temporary repairs on the damaged building. Some windows were boarded and a tarpaulin was placed over the roof. In February Boudreau expressed concern to Anthony Calandro regarding protective measures taken and offered to have First General undertake additional repairs. Calandro did not respond to this offer, but shortly thereafter purchased another tarp and engaged Barber to effect additional repairs. During the period between losses Calandro inspected the property periodically and took steps to make adjustments to maintain protection of the property.
Based on the evidence and testimony presented, the court finds that the defendant Allstate has failed to establish, by a fair preponderance of the evidence, that the plaintiffs violated the terms of their contract with Allstate by failing to take steps to protect the premises following the fire loss. The court finds that the plaintiffs took reasonable steps to protect the subject property in compliance with their obligations under the contract.
The court finds that claims both by the plaintiffs and Allstate that Meyer Biller and Biller Associates were responsible for protecting said property, and that Meyer Biller and Biller Associates were responsible for the water loss are without merit.
Following the water loss award, Allstate proposed to Biller Associates that Allstate would "front" the money owed the Calandros under the water loss award, if Biller Associates would agree to some form of alternate dispute resolution with Allstate to determine their respective responsibilities for said loss. Biller Associates rejected its proposal. Allstate claims Biller Associates failed to convey said proposal to the Calandros. The court finds that Biller Associates was under no duty to convey said proposal to its clients, the Calandros, and that Biller Associates was free to reject said proposal, which sought to have CT Page 13161 Biller Associates assume obligations beyond the scope of its contract with the Calandros.
The court finds, by a fair preponderance of the evidence, that the defendant Allstate, by reason of its failure to pay the plaintiffs Calandro the sums due them as a result of the award made on the water loss, is in breach of its contract with the Calandros.
 XII BILLER ASSOCIATES', COUNTERCLAIM AGAINST THE PLAINTIFFS.
The defendant, Biller Associates, by way of counter claim, alleges that the plaintiffs breached their contract with Biller Associates by failing to pay sums due it for services rendered in adjusting the plaintiff's loss. The court finds that Biller Associates, having violated its duty to the plaintiffs of good faith and fair dealing under the contract, is estopped from claiming payment under said contract. Judgment, accordingly, will enter for the plaintiffs Calandro on Biller Associates' counterclaim.
 XIII
Accordingly, judgment may enter for the plaintiffs, Anthony and Cynthia Calandro and against the defendant, Allstate on the plaintiffs' First Count, in the amount of twenty two thousand, three hundred twenty eight dollars and forty two cents ($22,328.42);
Judgment may enter for the plaintiffs, Anthony Calandro and Cynthia Calandro, and against the defendants Biller Associates only, on the plaintiffs' Second and Third Counts, in the amount of one ($1.00) dollar.
Judgment may enter for the plaintiffs, Anthony Calandro and Cynthia Calandro and against Biller Associates only, on the plaintiffs' Fourth Count, in the amount of fifteen thousand, five hundred one dollars ($15,501.00) and costs. Said amount of damages is calculated as follows:
Actual damages $ 1.00
Punitive damages $ 8,000.00
Attorneys' fees $ 7,500.00 CT Page 13162
Total $15,501.00
Judgment on the first count of Allstate Insurance Company's revised second amended third-party complaint may enter in favor of the defendant, Biller Associates and against Allstate Insurance Company.
Judgment on the counterclaim of Biller Associates may enter for the plaintiffs, defendants on the counterclaim, Anthony Cynthia Calandro, and against the defendant, plaintiff on the counterclaim, Biller Associates.
By the Court
Downey, J.