**Tommy JOSEY Plaintiff,**

v.

**FILENE'S, INC., Defendant.**

**No. CIV.A. 3:00CV1209(JCH).**

United States District Court,
D. Connecticut.

Feb. 6, 2002.

Richard S. Conti, James J. Walker, Diana, Conti & Tunila, Manchester, CT, for plaintiff.

Jon S. Berk, Renee Wocl Dwyer, Melissa B. Geetter, Gordon, Muir & Foley, Hartford, CT, for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]

HALL, District Judge.

Plaintiff, Tommy Josey ("Josey"), brings a claim against defendant, Filene's, Inc. ("Filene's"), alleging violations of 42 U.S.C. § 1983. In addition, the plaintiff asserts state law claims of assault, intentional and negligent infliction of emotional distress, false imprisonment, negligence and violation of Connecticut General Statutes § 42–

110a ("CUTPA"). The claims arise out of an incident during which the plaintiff was detained by the defendant and accused of stealing merchandise.

The defendant seeks summary judgment as to all the claims asserted. Specifically, the defendant seeks summary judgment on the § 1983 claim on the grounds that there was no state action involved as required by the statute. The defendant argues that summary judgment should be granted as to the claims of assault, negligent infliction of emotional distress, false imprisonment and negligence because the defendant's actions were justified under Connecticut General Statutes § 53a–119a which provides a complete defense against such claims. The defendant argues that summary judgment should be granted as to the CUTPA claim because the plaintiff has not proven any ascertainable loss as required under that statute. Finally, the defendant argues that the plaintiff has failed to present evidence to support a claim of intentional infliction of emotional distress.

For the reasons stated below, the court the GRANTS in part and DENIES in part defendant's motion.

## I. FACTS [1]

On October 1, 1999, Josey went with his friend, Jermaine Jenkins, to the Filene's store at the Buckland Hills Mall in order to purchase clothing. The Filene's security guards on duty observed Josey and Jenkins on the store security monitors. According to the deposition testimony of the security officers, the fact that Josey and Jenkins were picking out large amounts of merchandise without looking at the price tags raised a "red flag."

---

1. The following facts are undisputed unless otherwise indicated. The statement of facts is distilled from the uncontroverted portions of the Local Rule 9 Statements, affidavits, and other exhibits submitted in support of, and opposition to, these motions.

Josey and Jenkins proceeded to the sales register in a different department from the one where they selected their clothing. Again, according to the officers, this raised a suspicion regarding the two men. After initially preparing to purchase the clothing with cash, Josey decided to use his Filene's charge and apparently went to the customer service counter to pay cash on the balance of his account and then returned to the register to purchase the clothing. Josey and Jenkins then proceeded to leave the store whereupon they were apprehended by store security personnel, mall security and a Manchester police officer who was apparently on private duty at the mall. According to the security officers, they apprehended the men because they believed that Josey had used his employee discount to purchase clothing for Jenkins in violation of store policy and which the security personnel considered theft of property.

After handcuffing Josey and Jenkins, the store security guards brought the two men to a small holding cell. One of the officers filled out paperwork regarding the incident while the other asked the two men some basic questions. The Manchester police officer ran the two mens' names to determine if there were any warrants outstanding on them and, after his inquiry turned up negative and after the security officers indicated that they were not going to pursue the matter, he left. Josey and Jenkins apparently made cell phone calls while they waited. After ascertaining that Josey no longer worked for Filene's and, therefore, could not use his discount any longer, Filene's decided not to pursue the matter. Josey and Jenkins were given their merchandise back and allowed to leave. According to Josey, one of the officers told them not to get a lawyer and threatened him with prosecution if he did so. The officers deny having made that statement. Josey and Jenkins were de-tained for approximately 45 minutes to an hour.

## II. DISCUSSION

### A. Standard of Review

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. *See* Fed. R.Civ.P.56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor. *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Graham*, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton* 202 F.3d at 134. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *See Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

## B. § 53a–119a

■ Josey brings a number of state law claims. In response to the claims pled in Count One, Count Three, Count Four and Count Five, alleging assault, negligent infliction of emotional distress, false imprisonment and negligence, respectively, the defendant seeks summary judgment on the grounds that the defendant's actions were justified under Connecticut General Statutes § 53a–119a, thereby providing a bar to the plaintiff's claims. Josey argues in response that § 53a–119a is not applicable to the claims in this case because there was no larceny or attempted larceny involved. In addition, even if "employee discount fraud" could be considered larceny as defined by the statute, Josey argues that the security officers did not have reasonable grounds to believe that Josey was attempting to commit such larceny.

Connecticut General Statutes § 53a–119a provides, in pertinent part:

(a) Any owner, authorized agent or authorized employee of a retail mercantile establishment, who observes any person concealing or attempting to conceal goods displayed for sale therein, or the ownership of such goods, or transporting such goods from such premises without payment thereof, may question such person as to his name and address and, if such owner, agent or employee has reasonable grounds to believe that the person so questioned was then attempting to commit or was committing larceny of such goods ... may detain such person for a time sufficient to summon a police officer to the premises... For the purposes of this subsection, "reasonable grounds" shall include knowledge that a

person has concealed unpurchased merchandise ... or has altered or is leaving such premises with such unpurchased or concealed or altered merchandise in his possession.

Conn.Gen.Stat. § 53a–119a. The defendant asserts a claim of privilege under § 53a–119a(a).[2]

The threshold question for the court is whether the privilege applies given the specific factual circumstances in this case. The statute allows a store to detain a person who is observed to have concealed or attempted to conceal goods. A person may also be detained if he attempts to transport goods from a store without paying for them. Such a person may be detained and questioned if a store employee or agent has "reasonable grounds to believe that the person was attempting to commit or was committing larceny." Conn.Gen.Stat. § 53a–119a. The statute defines "reasonable grounds" as including "knowledge that a person has concealed unpurchased merchandise ... or has altered or removed identifying labels on such merchandise ... or is leaving the premises with such unpurchased or concealed or altered merchandise." *Id.*

■ The statute is clearly aimed at allowing stores to detain individuals suspected of stealing goods, or what is commonly referred to as shoplifting. The limited case law on the application of this statute demonstrates that stores may detain and question someone and then rely on the privilege when they reasonably suspect that person of stealing merchandise. *See e.g., Belli v. K–Mart Corp.,* 1997 WL 94257, at *1 (Conn.Super.1997) (plaintiff was detained after being observed conceal-

---

2. Such an assertion of privilege has to be pled as a special defense. Fed.R.Civ.P. 8(c); *Barrows v. J.C. Penney Co., Inc.,* 1994 WL 282294, at *1–2 (Conn.Super.1994). The defendant has not done so in this case. Howev-

er, the plaintiff represented during oral argument that he did not oppose the raising of the privilege by the defendant in the motion for summary judgment.

ing a portable phone and answering machine and attempting to leave the store with those items); *Degennaro v. Stop & Shop, Inc.*, 1994 WL 161296, at *1 (Conn.Super.1994)(plaintiff was detained after a store employee thought he observed the plaintiff removing the tag from a pair of eyeglasses and concealing the glasses in his pocket).

In this case, however, there is no allegation that the security guards saw Josey concealing or attempting to conceal goods. Indeed, there is no dispute that Josey brought all the merchandise he selected to the register and paid full price of the clothing with his credit card. Nor is there any allegation that he attempted to alter or remove any identifying labels on the clothing.

The defendant bases its reliance on the privilege on the grounds that, by improperly receiving an employee discount, the security guards had reasonable grounds to believe that Josey was committing larceny because he was not paying the full price for the goods. Such abuse of the employee discount is considered theft by the store security guards. In addition, the defendant argues that Josey was committing employee discount fraud by unlawfully purchasing goods for his friend in violation of the employee discount policy.

While abuse of an employee discount is undoubtedly a serious issue for the store, the court finds reliance on § 53a–119a in this case improper. As counsel for the defendant described during an oral argument held on January 23, 2002, an employee discount is not immediately applied to a purchase. Instead, an employee gets charged for the full amount of the merchandise. That amount is charged to a Filene's credit card. The employee discount is then applied retroactively to the card when the purchase gets processed through the store's Boston office. There-

fore, Josey had payed full price for the merchandise he bought and had not, in fact, committed any theft.

In *State v. Diaz*, the court, when discussing the history behind § 53a–119a, noted that the purpose of enacting the statute was to give "merchants a qualified privilege to detain and question suspected shoplifters and by creating a rebuttable presumption of guilt in a civil action by the detainee, if reasonable grounds to believe that the detained person was committing or attempting to commit a larceny are shown." 39 Conn.Supp. 392, 395, 466 A.2d 318 (Conn.Super.1983). In this case, there was no evidence that Josey was committing such a larceny, having paid full price for his goods. Nor was there the type of pressing need to detain addressed by the statute given that the store could have prevented the application of the discount by simply not applying it to Josey's account.

There remains a disputed issue of fact whether Josey had committed employee discount abuse by paying for his friend's clothing. However, the court finds that § 53a–119a does not provide a privilege for a store who seeks to detain an individual suspected of such abuse. Again, there was no concealment of goods or attempt to conceal goods which is what this statute covers. *See Silva v. Stop & Shop Cos., Inc.*, 1993 WL 7656, at *3 (Conn.Super.1993) (the court found the statute inapplicable in a case where an employee was suspected of improperly creating bottle returns but where the defendant "failed to allege that the plaintiff was concealing or attempting to conceal any goods").

The court finds that § 53a–119a of the Connecticut General Statutes does not provide a bar to the plaintiff's state law claims of assault, negligent infliction of emotional distress, false imprisonment and negligence. Therefore, the court denies the

defendant's motion for summary judgment as to those claims.

## C. CUTPA

■ In Count Seven of the Complaint, Josey alleges that the defendant's conduct violated the Connecticut Unfair Trade Practices Act ("CUTPA"). The defendant argues that summary judgment should be granted as to that claim because the plaintiff has not suffered any actual damages or sustained any ascertainable loss.

■ CUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn.Gen.Stat. § 42–110b. To state a claim under CUT-PA, a plaintiff must demonstrate that he suffered "an ascertainable loss of money or property, real or personal" as a result of the conduct prohibited by the Act. Conn. Gen.Stat. § 42–110g(a). While there is no need to prove the actual amount of loss suffered, *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 614, 440 A.2d 810 (1981), a plaintiff must "nonetheless demonstrate some loss or deprivation, detriment and injury ...." *Young v. Citicorp Retail Serv., Inc.*, 1997 WL 280508 (D.Conn.1997). "[A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known." *Hinchliffe*, 184 Conn. at 613, 440 A.2d 810.

In this case, Josey argues that he suffered loss because he was deprived of the right to his property while he was detained by the security guards. The defendant points to the case, *Ross v. Company Store*, 1991 WL 204357 (Conn.Super.1991), in which the plaintiff brought a CUTPA claim alleging that she had been unlawfully detained and searched while shopping in the defendant's store. The court found that she had not alleged facts which supported the ascertainable loss requirement. *Id.* at *1. However, facts of that case differ from the case at hand as none of the *Ross*

plaintiff's belongings were confiscated by the defendant, thereby depriving her of her property right. The court cannot conclude as a matter of law that deprivation of personal property for 45 minutes is not enough to sustain a measurable proof of loss. Therefore, the court denies the defendant's motion for summary judgment as to the CUTPA claim.

## D. Intentional Infliction of Emotional Distress

■ In Count Two of the Complaint, Josey brings a claim of intentional infliction of emotional distress. In order to assert a claim for intentional infliction of emotional distress, the plaintiff must establish four elements: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme or outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe. *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986); *see also Miner v. Town of Cheshire*, 126 F.Supp.2d 184 (D.Conn. 2000).

■ "Liability for intentional infliction of emotional distress requires conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." *Miner*, 126 F.Supp.2d at 194. While the court is certain that the experience of being handcuffed in front of other shoppers and being detained in the mall was not a pleasant experience, the court cannot find that these actions rise to the level of extreme or outrageous behavior. *See e.g., Drew v. K–Mart Corp.*, 37

Conn.App. 239, 655 A.2d 806 (Conn.App. 1995) (the court upheld a ruling by the lower court dismissing a claim where the plaintiff had become involved in an altercation in the parking lot with security guards over her son's alleged theft of a item and the incident was witnessed by the daughter of a co-worker).

■ In addition, the court cannot conclude that the distress Josey suffered was severe. While he testified that he was embarrassed by being apprehended in front of other shoppers, he has not sought medical attention for his distress. *See e.g., Reed v. Signode Corp.*, 652 F.Supp. 129 (D.Conn.1986) (where court granted motion for summary judgment on the plaintiff's intentional infliction of emotional distress claim, in part on the issue of severity, noting that it was significant that the "[p]laintiff was neither treated nor did he seek medical assistance for the distress he allegedly suffered"). In addition, while he expressed having felt anxiety about being detained, Josey was able to use his cell phone during the incident and spoke with his mother. Josey also testified that he is afraid to go back into the Filene's store and is afraid that people he knew saw him and will think he is thief. However, his fear has not prevented him from frequenting the mall or other Filene's stores in the area. He also testified in his deposition that he has not had the situation arise that someone saw the apprehension and thought badly of him. Based on this testimony and the other evidence in the case, the court finds that there is no evidence supporting the assertion that Josey has suffered severe distress.

The court finds that the facts alleged do not rise to the level of a claim of intentional infliction of emotional distress. Therefore, the court grants the defendant's motion as to that claim.

### E. Section 1983 Claim

■ In Count Six of the Complaint, Josey alleges that the actions of Filene's in summoning the police and directing the plaintiff's apprehension violated Josey's rights guaranteed by the Fourth Amendment and 42 U.S.C. § 1983. In order to prevail under § 1983, the plaintiff must allege that: (1) some person has deprived him of a federal right; and (2) that the person who has deprived him of that right acted under color of state law. *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 136–37 (2d Cir.1999) (citing *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993)). Filene's argues that the undisputed facts provide that the defendant did not act under the color of state law.

■ Generally, the acts of private security guards, hired by a store, do not constitute state action under § 1983. *Harris v. Security Co. of 1370 Sixth Avenue*, 1996 WL 556927, *2 (S.D.N.Y.1996); *see also, Moher v. Stop & Shop Cos., Inc.*, 580 F.Supp. 723 (D.Conn.1984). Courts have held that the actions of private security guards constitutes state action in two circumstances. First, private guards may be sued when they are given the authority of state law. *Temple v. S.O. Albert*, 719 F.Supp. 265, 267 (S.D.N.Y.1989) (in New York City, can be designated "Special Patrolmen" and then have authority of state law). Second, security guards are considered to be acting under state law if they are "willful participants in the joint activity of the State or its agents." *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Indeed, any private person acting in such a capacity would be considered as acting under state law. *Id.*

■ In this case, the security guards did not have any special authority under state law to arrest the plaintiff. Second,

there is no evidence that there was a plan or concert of action between the police officer and the security guards. *Moher,* 580 F.Supp. at 725. Rather, the officer seems to have reacted to a general request for backup issued by the store security to the mall security. The officer seems to have had no understanding prior or during the apprehension about why Josey was being detained. Indeed, Josey testified that the officer told the two men that he did not know what was going on. Josey Dep. at 28. In addition, there is no evidence that the officer requested that Filene's security detain the two men. To constitute state action, there must be more than the fact that the security guards can call police for assistance. *Harris,* 1996 WL 556927 at * 3. Some courts have held that when an police officer arrests a person based solely on the word of the security guards and without conducting a separate inquiry, that constitutes joint action with the state. *Brooks v. Santiago,* 1994 WL 529865, *2 (S.D.N.Y.1994). However, there was no arrest in this case and it appears that the police officer did not participate in the detention apart from checking whether there were any outstanding warrants on the two men.

The Supreme Court has recently reiterated a number of factors to consider when determining if a challenged activity was a state action. *Brentwood Academy v. Tennessee Secondary Sch. Athletic Assoc.,* 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). First, state action may be found when it results from the state's exercise of coercive power. *Id.* (citing *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). There appears to have been no use of such power here. Second, state action may be found when the state provides "significant encouragement, either overt or covert." *Id.* Josey argues in his

Memorandum in Opposition, (Dkt. No. 28) that the officer's presence at the scene and his participation amounted to significant encouragement. The court finds no facts that could support such a finding. The officer's mere presence, in response to a radio broadcast, cannot constitute significant encouragement given that the security guards had already made a decision to apprehend Josey and the officer's participation became necessary only because one of the security guards was delayed getting to the scene. Farinella Dep. at 31. Finally, the Supreme Court points to whether the private actor operates as a "willful participant in joint activity with the State or its agents." *Brentwood Academy,* 531 U.S. at 296, 121 S.Ct. 924. Again, as discussed above, there is no evidence that the officer's involvement rises to the level of a joint activity.

In this case, private security guards employed by Filene's made a decision to apprehend Josey and Jenkins and to detain them. While there are considerable factual disputes regarding the lawfulness of these actions, the court cannot find that there was any state action in this case. The mere presence of a municipal officer in the apprehension does not constitute state action. Therefore, the court grants the defendant's motion for summary judgment as to the claim brought pursuant to 42 U.S.C. § 1983.

The defendant appears to argue that the court should not exercise jurisdiction over the remaining state claims if it grants summary judgment on the § 1983 claim, as that is the only federal question claim. However, the plaintiff has invoked the jurisdiction of this court under both 28 U.S.C. § 1331 and 28 U.S.C. § 1332, asserting that the court has jurisdiction over the issue of federal law contained in the Complaint, as well as jurisdiction based on the diversity of the parties. The defendant

18

has not raised any issues concerning that jurisdiction. Given that the court has diversity jurisdiction, dismissal of the state law claims would clearly be error.

## III. CONCLUSION

The court grants in part and denies in part the defendant's motion for summary judgment (Dkt. No. 25). The court denies the defendant's motion as to the state law claims of assault, false imprisonment, negligent infliction of emotional distress and negligence, finding that the defendant failed to plead the privilege under Connecticut General Statutes § 53a–119a as a special defense. The court grants the defendant's motion as to the claim of intentional infliction of emotional distress, finding that the plaintiff has failed to make out a claim. The court denies the defendant's motion as to the CUTPA claim, finding that deprivation of personal property could fulfill the ascertainable loss element of a CUTPA claim. Finally, the court grants the defendant's motion as to the § 1983 claim, finding no state action as required by the statute.

**SO ORDERED**